Easton Hospital, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued April 6, 1983, before President Judge CRUMLISH, JR. and Judges WILLIAMS, JR. and BARBIERI, sitting as a panel of three.

*Joel M. Scheer, Fishbone, Refowich & Sheer,* for petitioner.

*Jeffrey Gonick,* Assistant Counsel, for respondent.

OPINION BY JUDGE BARBIERI, July 29, 1983:

Easton Hospital appeals here from an order of the Pennsylvania Department of Public Welfare's Office of Hearings and Appeals, which denied Easton reimbursement for care it rendered patients eligible for medical assistance (Medicaid).

Easton Hospital is an acute care facility which in 1979 sought reimbursement from the Department of Public Welfare (DPW) for care it rendered medical assistance patients. Easton's claim was for patients who were no longer in need of acute care, but through no fault of its own, remained in Easton due to the unavailability of hospital beds in any suitable lower care facilities. After an initial administrative denial of Easton's request for reimbursement, Easton appealed to DPW's Office of Hearings and Appeals. During the interim before hearing, however, Easton requested that its appeal be held in abeyance until our Supreme Court's disposition of *Temple University v. Pennsylvania Department of Public Welfare,* 47 Pa. Commonwealth Ct. 22, 407 A.2d 92 (1979), *aff'd. mem.,* 490 Pa. 207, 415 A.2d 413 (1980), *appeal dismissed,* 449 U.S. 1005 (1980), *(Temple II),* which Easton claimed presented the identical issue raised in its appeal. Our Supreme Court's decision in *Temple II,* filed June 18, 1980, affirming the decision of this Court, upheld the DPW's position. Thereafter, Easton amended its appeal to DPW's Office of Hearings and Appeals to request payment not at an acute care level, but for that level of care DPW would have been obliged to reimburse had the patient been transferred on the day acute care was no longer necessary; that being either skilled nursing or intermediate care.

DPW filed a motion to dismiss Easton's appeal which the Office of Hearings and Appeals granted, and the present appeal followed.

Easton first contends that *Temple II* is not dispositive of the present action, since *Temple II* involved reimbursement at acute care rates, and in the present situation Easton is only asking for the same

lower level of care reimbursement DPW would have had to pay another facility had Easton been able to transfer its patients to a certified lesser care facility. We disagree.

In *Temple II,* Temple University and the Hospital Association of Pennsylvania initiated an equity action against DPW seeking to enjoin the implementation of the regulation now in dispute which provides in part that:

> Except as noted below, Medical Assistance payments are not made to hospitals either for specific noncovered services and procedures or for prolonged hospitalization which is not medically justified.
>
> . . . .
>
> Prolonged hospitalization includes extended hospitalization for:
>
> . . . .
>
> (q) Patients who no longer require acute patient care. However, the Department will make payment to the hospital for skilled nursing or intermediate care provided for a patient in a certified bed in a certified and approved hospital based skilled nursing or intermediate care unit.

Section 9421.74(q) of the Medical Assistance Manual, 7 Pa. B. 2180 (1977). Temple University and the Hospital Association argued there that this regulation was in violation of our holding in *Department of Public Welfare v. Temple University,* 21 Pa. Commonwealth Ct. 162, 343 A.2d 701 (1975) *(Temple I),* violated equal protection, was beyond DPW's authority, and was inconsistent with federal law. In disposing of these arguments, we stated in part that this regulation was a reasonable attempt by DPW to promote legitimate economic interests and that any

disparity in reimbursement was brought about by the failure of plaintiffs to comply with the rational standards established for reimbursement. What is clear from our *Temple II* decision, contrary to Easton's contention, is that reimbursement is not dependent upon the level of care for which reimbursement is being sought, but rather upon compliance with the standards established by this regulation, those being skilled nursing or intermediate care rendered by a facility certified to provide those levels of care.

Also, Easton argues that it should have been allowed to show why application of the above regulation is unduly burdensome in their case based upon this Court's comment in *Temple II* where we stated: ''There is, moreover, no evidence before us that providing the services required would be unduly burdensome to plaintiffs.'' *Id.* at 26, 407 A.2d at 95. This argument, however, reads this passage out of context from what we were saying in *Temple II*. In upholding DPW's regulation as reasonable and not beyond that department's powers, this Court was merely questioning, based upon the facts as presented in that case, why the plaintiffs could not comply with this regulation in light of twenty-nine other hospitals in the Commonwealth which did at that time. We were not, as Easton would now imply, establishing a test under this regulation whereby a hospital would be entitled to prove its individual burdens under this regulation as a way of circumventing the standards set forth therein. Our decision in *Temple II* made clear that this regulation does not allow for discretion in its application.

We must also reject Easton's argument that our reasoning in *Temple I* should be controlling. This argument was raised and disposed of in *Temple II* where this Court stated:

As to our holding in Temple I, we decided that it was an abuse of administrative discretion for the DPW to deny reimbursement to a hospital which had made a diligent effort to find a lesser care facility. Under the regulations then in effect, however, the DPW had the discretion to deny reimbursement. Here, the situation is different because there is no such discretion provided for in the currently applicable regulation. In reality, therefore, it is the manner of reimbursement rather than the refusal to reimburse which is here under attack, and we believe that the issues raised here are not controlled by our decision in Temple I.

*Id.* at 25, 407 A.2d at 94.

Lastly, Easton has urged this Court to adopt the reasoning employed by the New Jersey Supreme Court in *Monmouth Medical Center v. State,* 80 N.J. 229, 403 A.2d 487 (1979), *cert. denied,* 444 U.S. 942 (1979), where that court held a state regulation, which denied reimbursement to hospitals for services rendered patients who could adequately be treated in less intensive care facilities, but through no fault of the hospital could not be transferred, in clear conflict with the Federal Medicaid Act, 42 U.S.C. §§1396-1396(p), and its accompanying regulations, 42 C.F.R. §§431.1-431.802, which require reimbursement to hospitals for all reasonably necessary hospital services rendered to Medicaid patients.

The *Monmouth* case is easily distinguishable from the present situation in that the New Jersey regulation flatly denied all reimbursement for lower level care, whereas the DPW regulation now in question does not bar reimbursement, but merely requires that before reimbursement be made, the facility be certified to administer the level of care for which they are

seeking reimbursement. The requirement of certification is a reasonable one which guarantees that a facility, which is seeking reimbursement for a certain level of care, is competent by state standards to administer those services.

For the foregoing reasons, the order of DPW's Office of Hearings and Appeals denying reimbursement to Easton is affirmed.[1]

ORDER

AND Now, this 29th day of July, 1983, the decision of the Department of Public Welfare, dated November 10, 1981, dismissing Easton Hospital's appeal is hereby affirmed.

---

[1] Since we find no merit in Easton's appeal on the merits, we need not address DPW's question whether or not the *Temple II* decision was *res judicata* or collaterally estopped Easton from bringing the present action. Additionally, we need not address Easton's argument that it is entitled to reimbursement upon a *quantum meruit* theory, since Easton did not raise this issue below. *See* Section 703 of the Administrative Agency Law, 1 Pa. C. S. §703.