Mercy Hospital, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued January 31, 1985, before Judges MAC-PHAIL, BARRY and PALLADINO, sitting as a panel of three.

*Joseph A. O'Brien, Oliver, Price & Rhodes,* for petitioner.

*Bruce G. Baron,* Assistant Counsel, with him, *John Kane,* Assistant Counsel, for respondent.

OPINION BY JUDGE MACPHAIL, May 8, 1985:

Mercy Hospital (Mercy) appeals here from an order of the Pennsylvania Department of Welfare's Office of Hearings and Appeals (Office) which denied Mercy reimbursement for care it rendered to a patient eligible for medical assistance.

Mercy, an acute care facility, sought reimbursement from the Department of Public Welfare (DPW) for care it rendered to patient Margaret Connell (Connell). Mercy's claim was for the period between

February 21, 1983 and March 16, 1983, when Connell was no longer in need of acute care, but due to an administrative delay in approving her transfer to another facility, she remained at Mercy.

After an initial administrative denial of Mercy's request for reimbursement, Mercy appealed. A hearing officer recommended that the appeal be sustained, reasoning that Mercy made every reasonable effort to promptly transfer Connell and continued to provide medically necessary services until the transfer could be accomplished.[1] The Office rejected the recommendation and denied reimbursement. The instant appeal followed.

Our scope of review of a DPW denial of reimbursement is limited to a determination of whether constitutional rights have been violated, whether there was an error of law or whether any necessary findings of fact made by DPW are not supported by substantial evidence. *Montgomery County Geriatric & Rehabilitation Center v. Department of Public Welfare*, 75 Pa. Commonwealth Ct. 248, 462 A.2d 325 (1983). In this appeal, Mercy contends that DPW is estopped to deny reimbursement because the delay in the transfer was caused by DPW.[2]

---

[1] The hearing officer noted that the transfer was approved on March 11, 1983, but that Connell was not transferred until March 16, 1983. The hearing officer recommended that Mercy be reimbursed for February 21, 1983 through March 11, 1983.

[2] "The elements of estoppel are (1) misleading words, conduct or silence by the party against whom the estoppel is asserted; (2) unambiguous proof of reasonable reliance on the misrepresentation by the party seeking to assert the estoppel; (3) no duty of inquiry on the party seeking to assert the estoppel." *Divine Providence Hospital v. Department of Public Welfare*, 76 Pa. Commonwealth Ct. 188, 191-192, 463 A.2d 118, 119 (1983) (quoting *Livingston v. Livingston*, 275 Pa. Superior Ct. 285, 292, 418 A.2d 724, 728 (1980)). We note that hospitals participating in the Medical As-

The DPW relies upon regulations from its Medical Assistance Manual, Sections 9421.74(q) and 9421.74 (r), which state, in pertinent part:

Except as noted below, Medical Assistance payments are not made to hospitals either for specific non-covered services and procedures or for prolonged hospitalization which is not medically justified.

Non-covered services and procedures include:

. . . .

(q) Patients who no longer require in-patient care. However, the Department will make payment to the hospital for skilled nursing or intermediate care provided for a patient in a certified and approved hospital-based, skilled nursing or intermediate care unit.

(r) Patients remaining in-house beyond the length of stay certified by the peer review or utilization review committee of the hospital or the P.S.R.O. or the Department's P.D.U.R. unit.

. . . .

The above categories of services or procedures are non-compensable to the hospital and physician under Medical Assistance whether or not the attending physician or utilization review committee of the hospital or professional standards review organization determines the medical necessity for the patient's need for the services.

sistance Program are charged with knowledge of the applicable DPW regulations, *Divine Providence Hospital*, and that no misrepresentations were made by DPW. We conclude that Mercy has not established the elements of estoppel.

Sections 9421.74(q) and (r) of the Medical Assistance Manual, 7 Pa. B. 2179, 2180 (1977).[3]

DPW contends that after February 21, 1983, Connell no longer required acute in-patient care, that she remained at Mercy beyond her certified length of stay, and that pursuant to the above regulations, Mercy has no right to reimbursement. Mercy agrees that Connell could have been transferred as early as February 21, 1983, and that a bed was available at a rehabilitation center, but argues that the delay in making the actual transfer was caused entirely by DPW's failure to timely approve the transfer. Mercy's representative testified that the rehabilitation center would not accept Connell until her application for medical assistance had been approved by DPW. Mercy argues that it should not be penalized by DPW for continuing to care for Connell until her transfer was affected.

Whether a hospital will be reimbursed depends upon whether there has been compliance with the regulations. *Easton Hospital v. Department of Public Welfare,* 76 Pa. Commonwealth Ct. 39, 463 A.2d 94 (1983). The reimbursement claim in *Easton Hospital* was for patients who were no longer in need of acute care, but through no fault of the hospital, remained at the hospital because no vacant beds were available elsewhere. We rejected this claim, reasoning that whether or not the hospital had made a diligent effort to transfer patients, the regulations did not allow for discretion in their application. *Id.*[4] Therefore, the issue is not

---

[3] We must accord DPW's interpretation of its own regulations controlling weight, unless that interpretation is plainly erroneous, inconsistent with the regulations, or inconsistent with the underlying federal scheme. *Department of Public Welfare v. Forbes Health System,* 492 Pa. 77, 81, 422 A.2d 480, 482 (1980).

[4] We based our holding in *Easton Hospital* on our discussion of Section 9421.74(q) of the Medical Assistance Manual in *Temple University v. Pennsylvania Department of Public Welfare,* 47 Pa.

whether Mercy had made a diligent effort to transfer Connell but whether the hospital complied with DPW regulations. It is undisputed that Mercy did not. Accordingly, DPW did not err in denying reimbursement. We affirm.

ORDER

The decision of the Department of Public Welfare, dated August 9, 1983, dismissing the appeal of Mercy Hospital is hereby affirmed.

Judge WILLIAMS, JR., did not participate in the decision in this case.

---

Commonwealth Ct. 22, 407 A.2d 92 (1979), aff'd mem., 490 Pa. 207, 415 A.2d 413, appeal dismissed, 449 U.S. 1005 (1980). In Temple, we upheld Section 9421.74(q)'s denial of reimbursement to hospitals providing for medical assistance patients for whom acute care was unnecessary, but for whom space in other, lesser care facilities could not be found.

---

DISSENTING OPINION BY JUDGE BARRY:

Despite the fact that the case law cited by the majority reasonably can be construed to support its position that Mercy Hospital is not entitled to reimbursement for the services rendered to Ms. Connell, I am unable to accept such a harsh result and must therefore dissent.

Crucial to my belief that the Hospital should be reimbursed is the hearing officer's factual finding that the Hospital made every reasonable effort to effectuate the transfer of Ms. Connell to the facility which had a bed available at the time and could provide the required level of care. The new facility, however, would not accept Ms. Connell until the Department of Public Welfare (DPW) approved the transfer and the hearing officer again found that DPW failed to approve the transfer in a timely fashion. Under these circumstances, the Hospital was faced with a very dif-

ficult choice. It could allow Ms. Connell to remain in the Hospital, realizing it could be denied reimbursement for the services provided; on the other hand, the Hospital could have discharged Ms. Connell even though it was obvious that she required care of a less intensive level that the Hospital was certified to provide. The Hospital chose the more humane alternative.

We must remember that it is DPW's own regulations which it is using to deny reimbursement to the Hospital. From the tenor of DPW's arguments in this case, one would believe that DPW has no choice but to act as it did, since DPW says all it was doing was following the applicable regulations. I do not believe that the actions of DPW in this case should be able to withstand our scrutiny by the invocation of regulations which are applied unfairly.

A narrow exception must, therefore, be carved out of the rule that reimbursement depends on compliance with DPW regulations where the noncompliance, as here, is the result of DPW's own actions. If such were not the case, one could not blame any hospital for discharging a patient who was still in need of care. I refuse to sanction such a rule which might persuade a hospital to act in disregard of human health and life.