G. D. Roberts et al., Appellants *v.* Office of Administration, Commonwealth of Pennsylvania.

Argued December 10, 1976, before Judge CRUMLISH, JR., MENCER and BLATT, sitting as a panel of three.

*John R. White,* with him *Christine H. Kellett,* for appellants.

*Jeffrey G. Cokin,* Deputy Attorney General, with him *Robert P. Kane,* Attorney General, for appellee.

OPINION BY JUDGE CRUMLISH, JR., April 28, 1977:

Ten Pennsylvania State Police Troopers (Appellants) have appealed a decision of the Secretary of Administration (Secretary) refusing them a hearing on the grievance described hereinbelow. We reverse and remand and direct the Secretary to conduct the requested hearing.

In 1969 the State Police Commissioner (Commissioner) instituted the new rank of Crime Investigation Specialist (CIS), together with a special training program, and invited state policemen to apply for it. Appellants applied and were admitted in May, 1970. They were immediately advanced to a pay scale equivalent to that of Corporal, and were removed from the normal competitive ranks and restricted to competition for promotion within the CIS series.

On March 23, 1972, the CIS program was terminated as a result of an opinion of the Attorney General wherein he stated that the program as it then existed was illegal because of the absence of rules and regulations governing it, and because the initial entry of individuals into the program was in disregard of merit principles. Appellants were thereupon reclassified to the rank of Trooper, but received no reduction in pay. At that time, a section of the Pennsylvania State Police Field Regulations provided for

an informal procedure for the airing of grievances. Though Appellants complained to their superiors about the reclassifications, they took no formal action for three and a half years. On October 29, 1975, the Commissioner promulgated a new, more detailed, four-step grievance procedure. Shortly thereafter, Appellants availed themselves of the new procedure by formally asserting their grievances in writing to their immediate supervisors (Step 1), their Troop Commanders (Step 2), the Commissioner (Step 3), and the Secretary (Step 4). They were denied relief at all levels and the Secretary denied their request for a hearing.

Appellants' argument on the merits is that the administrative action of reclassifying them from the rank of Trooper to the rank of Crime Investigation Specialist was in law a promotion and that their subsequent reclassification some two years later was a demotion, as this Court has defined the term. Appellants contend that this alleged demotion is in direct conflict with Section 205(e) of the Administrative Code of 1929,[1] which reads:

> No enlisted member of the Pennsylvania State Police shall be . . . reduced in rank except by action of a court martial held upon the recommendation of the Commissioner of the Pennsylvania State Police and the Governor.

They claim entitlement to promotion to the rank of Corporal, a right which they say they could establish if given a hearing, and contend that to deny them a hearing is a denial of fundamental due process.

In addition to addressing the merits, the Secretary has moved to quash the appeal on essentially two grounds: first, that his action did not constitute an adjudication and therefore is not appealable; and second, that having slept on their grievance for over three

---

[1] Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. §65(e).

and a half years, Appellants are barred from airing it now. We find no merit in either contention.

"Adjudication" is defined by Section 2 of the Administrative Agency Law[2] as "any final order, decree, decision, determination, or ruling by an agency affecting personal or property rights, privileges, immunities or obligations. . . ." If Appellants' argument that they have been unjustly demoted and are therefore entitled to promotion to Corporal is correct (and we so consider it, in ruling on the motion to quash), the Secretary's action would be one "affecting personal [and] property rights, privileges, immunities or obligations." *See Begis v. Industrial Board of the Department of Labor and Industry,* 9 Pa. Commonwealth Ct. 558, 308 A.2d 643 (1973). His action here involved the exercise of discretion and not the performance of a purely ministerial duty, and was therefore judicial in nature, which, we have held, is another attribute of an adjudication. *Fricchione v. Department of Education,* 4 Pa. Commonwealth Ct. 288, 287 A.2d 442 (1972).

Our decisions in *Department of Health v. Schum,* 21 Pa. Commonwealth Ct. 356, 346 A.2d 599 (1975), and *O'Peil v. State Civil Service Commission,* 13 Pa. Commonwealth Ct. 470, 320 A.2d 461 (1974), are not inconsistent with our holding here. We held in those cases that, where an administrative agency or official refuses to hear the merits of a grievance at all, ruling merely that the grievance procedures are not available to the particular grievant, the action is not an adjudication and therefore not reviewable through appeal; and if the grievant disagrees, believing that the agency or official has a clear duty to hear his grievance, his remedy is in mandamus. Here, the Secretary's letter discusses the merits of the claim in detail and purports to dispose of every aspect of the

---

[2] Act of June 4, 1945, P.L. 1388, *as amended,* 71 P.S. §1710.2(a).

grievance completely and with finality.[3]   It therefore is an adjudication and is properly before us on appeal.

Second, we disagree with the Secretary that the passage of three and a half years bars this action. The grievance procedure in effect from the time of the reclassifications to the time of the promulgation of the new four-step procedure prescribed no limitation of time in which complaints could be brought.   And, although the Secretary alleges that promoting Appellants to the rank of Corporal will result in the disruption of State Police promotion schedules and the violation of a consent decree requiring the State Police to integrate their ranks at a specified rate, we perceive no causal relationship between the alleged prejudicial effects and Appellants' delay.   Moreover, there

---

[3] The Secretary's letter reads, in part, as follows :

After thoroughly reviewing the matter, we find no basis for holding a fourth-step hearing. As we understand the complaints, they arise from the fact that employes classified as Crime Investigation Specialists were reclassified to their former rank of Trooper which they feel constitutes a demotion. The redress they are seeking is to be awarded the rank of Corporal.

. . . .

Clearly the grievants understood the meaning and scope of the Crime Investigation Specialist program in that they chose to enter voluntarily and that removal or request to transfer would result in being assigned to the uniform ranks at a position which was held previous to entering the program. We would also like to point out that upon abolishment of the program and the reversion to ranks previously held, the employes did not experience a reduction in pay.

In view of the above and inasmuch as the grievances, relating as they do to actions which occurred several years ago, were not submitted within the timeliness requirements of the grievance procedure, the ten grievants should be notified that their grievance is denied and no further review or hearing of the matter is deemed necessary by this office. We do not pass upon the correctness of these statements.

is a substantial question as to whether the delay was justified by statements by the Commissioners that the reclassifications were temporary and that a new Detective Program would be instituted to replace the CIS program. Accepting Appellants' allegations to that effect as true for purposes of the motion to quash, the delay cannot be said to have been unreasonable. Accordingly, we deny the motion to quash.

At this point, we would usually resolve the merits of the case, *i.e.*, decide whether the reclassification of Appellants back to Trooper constituted in law a demotion and whether such a demotion was contrary to the mandate of the Administrative Code. However, the record sorely lacks sufficient factual development on this point, due to the fact that Appellants were never given a hearing. Since the lowering of an employe's importance, dignity, responsibility, authority and/or prestige may, without more, constitute a demotion, *Department of Education v. Kauffman*, 21 Pa. Commonwealth Ct. 89, 343 A.2d 391 (1975), Appellants must be afforded an opportunity to present testimony relevant to those factors.

Accordingly, we

### ORDER

AND Now, this 28th day of April, 1977, the appeal in this matter is hereby granted. The decision of the Secretary of Administration is reversed and the case remanded to him for a hearing on the merits forthwith.

DISSENTING OPINION BY JUDGE BLATT:

I respectfully dissent.

In March of 1972 an employment program in which the appellants were involved was terminated, and they were then reclassified and allegedly demoted. They overlooked or disregarded a then existing grievance procedure and took no formal action whatever until

sometime after October of 1975, when they filed a grievance pursuant to a new, and more formal, grievance procedure then in effect. It seems to me that the doctrine of laches bars their institution of a grievance here, when three and one-half years have elapsed since the alleged demotions occurred.

> The application of the equitable doctrine of laches does not depend upon the fact that a certain definite time has elapsed since the cause of action accrued, but whether, *under the circumstances of the particular case,* the complaining party is guilty of want of due diligence in failing to institute his action to another's prejudice. The question of laches is factual and to be determined by an examination of the circumstances. (Citations omitted.) (Emphasis added.)

*Wilson v. King of Prussia Enterprises, Inc.,* 422 Pa. 128, 133, 221 A.2d 123, 126 (1966).

An administrative department, which is constantly in the process of appointing and promoting personnel, would be greatly prejudiced by being required to reconsider actions taken three and one-half years previous to the filing of a formal protest of such action and I would, therefore, affirm the Secretary of Administration's denial at this time of a hearing on the appellants' grievance.