County of Allegheny, A Political Subdivision of the Commonwealth of Pennsylvania, Petitioner v. Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

562

Submitted on briefs, May 7, 1981, to President Judge CRUMLISH and Judges ROGERS and BLATT, sitting as a panel of three.

*Alexander J. Jaffurs*, County Solicitor, with him *James H. McLean*, County Solicitor, and *Loraine S. Tabakin*, Assistant County Solicitor, for petitioner.

*Howard Ulan*, Assistant Attorney General, for respondent.

OPINION BY JUDGE BLATT, September 14, 1981:

The issue in this case is a narrow one. Does the petitioner county of Allegheny (County) have a right

of appeal from an action of the respondent Department of Public Welfare (DPW) denying it additional funding or relief[1] from the obligation to insure additional mental health service in the community?

On August 2, 1978, the County applied to the DPW for additional funding for its "Aftercare Service"[2]; alternatively, application for relief was made pursuant to Section 508 of the Mental Health and Mental Retardation Act (MHMR Act). Section 508 of the MHMR Act in pertinent part provides:

Relief of county from obligation to insure service; State's obligation; liability in such cases

(a) If local authorities cannot insure the availability of any of the services required by Section 301[1] or if they assert that it would be economically unsound to do so, such authorities may make application to the department to be relieved for the period of one year from the duty to insure their availability.

Such application shall specify; (i) the service or services involved and (ii) facts upon which it seeks relief.

(b) If the department after consideration of the application and such independent investigation as it shall deem appropriate determines that the application is justified, it may

---

[1] Pursuant to Section 508 of the Mental Health and Mental Retardation Act of 1966, Act of October 20, 1966, Spec. Sess. No. 3, P.L. 96, *as amended*, 50 P.S. §4508.

[2] "'Aftercare' means services rendered to a person after his release from a facility, designed to assist such person in establishing and maintaining himself as a member of society, including foster home placement, home visiting, observation, halfway houses and outpatient care." Section 102 of the Mental Health and Mental Retardation Act, 50 P.S. §4102. Aftercare service is made a concomitant duty of the state and county under Section 301(d)(6) of the Act, 50 P.S. §4301(d)(6).

approve the same, in which event, the department may insure the availability of the service or services specified in the application, for the year specified in the application.

The County's two-fold request was denied in a March 14, 1979 letter by the DPW on the grounds that investigation and review indicated 1) that the proposal for additional funds was impracticable because the DPW had no funds available beyond those already allocated to the County for aftercare for that year and/or by implication, that the County had not submitted a sufficient formalized plan,[3] and 2) that the County's request for Section 508 waiver-relief was inappropriate because that section only applies to applications for total (as opposed to additional) relief from the duty to provide a mandated service.

The County contends that the DPW's letter of March 14, 1979 denying both additional funds and Section 508 waiver-relief constituted a final adjudication appealable to this Court and subject to Section 101 of the Administrative Agency Law, 2 Pa. C. S. §101, which provides that an adjudication is:

Any final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made.

The County contends, therefore, that the DPW's alleged adjudication is invalid in that Section 504 of the above-mentioned Law, 2 Pa. C. S. §504, also provides that:

No adjudication of a Commonwealth agency shall be valid as to any party unless he shall

---

[3] See respondent's letter of March 14, 1979 at paragraphs 6 and 7.

have been afforded reasonable notice of a hearing and an opportunity to be heard. All testimony shall be stenographically recorded and a full and complete record shall be kept of the proceedings.

As to whether or not the DPW's letter of March 14, 1979, was an adjudication subject to review by this Court and within the purview of the Administrative Agency Law, we have previously held, as a general proposition, that a letter[4] can constitute an adjudication when such letter is a final determination affecting personal or property rights, privileges, immunities, or obligations of a party to the proceeding. *Lamolinara v. Pennsylvania State Police*, 51 Pa. Commonwealth Ct. 570, 414 A.2d 1126 (1980); *Burgerhoff v. Pennsylvania State Police*, 49 Pa. Commonwealth Ct. 49, 410 A.2d 395 (1980). Furthermore, we have recognized that a letter which discusses the merits of issues raised by a recipient indicates that an adjudication has occurred. *Burgerhoff v. Pennsylvania State Police, supra; see Roberts v. Office of Administration*, 30 Pa. Commonwealth Ct. 19, 372 A.2d 1233 (1977).

As to the request for waiver-relief, the letter denying the County's request would also seem to be an adjudication, but close inspection would indicate to the contrary. Administrative statutory construction should be considered in the interpretation of a statute according to Section 1921(c)(8) of the Statutory Construction Act of 1972, 1 Pa. C. S. §1921(c)(8), and the

---

[4] In *Commonwealth v. Taylor*, 93 Dauph. 48, 52 (1970), the court noted that a letter from the Secretary of Public Welfare, while somewhat informal, constituted an adjudication within the meaning of the Administrative Agency Law. The Court also noted that "[t]he Department of Public Welfare may be somewhat unique in the form which it uses in handing down its decisions. . . ."

DPW has interpreted[5] Section 508 as applicable only where extraordinary circumstances make it impossible or uneconomical for a county to provide a mandated service despite the provision of funds by the DPW. The request by a county for a "total" Section 508 waiver differs markedly from the County's request here for "partial relief" from the duty to provide aftercare services above and beyond those which can be provided with available funds. In form, the County's request appears to be a request for Section 508 relief; its substance, however, is a request for additional funds to finance additional aftercare services and is therefore an inappropriate waiver-relief request under that Section.

The basis of the County's application for Section 508 relief was a lack of sufficient funds to provide additional aftercare services. Section 509(5)[6] of the MHMR Act states that "the counties shall be required to provide only those services for which sufficient funds are available." Hence, the county is automatically relieved by operation of statute from its duty to provide a mandated service to the extent of such lack of funds. Thus, Section 509(5) automatically relieves the County from the obligations it sought relief from via Section 508. The DPW, therefore, has no decision to make regarding the relief here requested. We must, therefore, find that the County improperly made a Section 508 request and that the effect of Section 509(5) was automatic, so that the DPW's letter of March 14, 1979 does not constitute an adjudication reviewable by this Court nor is it within the purview of the Administrative Agency Law requirements for a hearing as to such request.

---

[5] Letter of Hon. Helen B. O'Bannon of March 14, 1979, p. 2.
[6] 50 P.S. §4509(5).

The DPW also contends that the County's request for additional funds was not an adjudication because the requested funds were unavailable to the DPW. The record indicates,[7] however, that the DPW's consideration, lengthy investigation and evaluation of the merits of this County's request were something more than a purely ministerial act. For instance, the DPW's letter of August 31, 1978, stated that:

> the Department is giving your application every consideration. In order to ascertain all the facts prior to reaching such an important decision, the Department will conduct a full review of the facts and determine the appropriateness of the County's petition.

This Court has recognized that a discussion of the merits of the issues raised by a recipient is an indication that an adjudication has occurred. *Burgerhoff v. Pennsylvania State Police, supra; see Roberts v. Office of Administration, supra.* It is clear, therefore, that the DPW's March 14, 1979 letter exercised or evidenced the exercise of judgment and discretion in denying this request for additional funds, and constituted an adjudication colorably affecting obligations, personal or property rights of the County. Consequently, under the terms of the Administrative Agency Law, 2 Pa. C. S. §§101 and 504, this letter was an invalid adjudication insofar as it concerned the County's request for additional funds. The record in this case, however, is inadequate for this Court to determine at this time just what the DPW actually did. At any rate, it did not conduct a hearing. *Roberts v. Office of Administration, supra.* We will, therefore, reverse the DPW's final determination

---

[7] Letters of August 31, 1978 and October 16, 1978 from the Hon. Aldo Colautti, then Secretary of the Department of Public Welfare.

that the County's request for additional funds could not be granted and remand this question back to the DPW so that the County may be afforded a hearing.

ORDER

AND Now, this 14th day of September, 1981, the action of the Department of Public Welfare in the above-captioned matter denying petitioner's Section 508 relief or additional funds is sustained as to the Section 508 denial; but, reversed and remanded to the Department of Public Welfare for a hearing as to the request for additional funds.