589 A.2d 283

### In re William EMERY.

### Appeal of PHILADELPHIA COUNTY OFFICE OF MENTAL HEALTH/MENTAL RETARDATION, Appellant.

Commonwealth Court of Pennsylvania.

Argued Sept. 10, 1990.

Decided April 3, 1991.

---

670

Howard Ulan, Asst. Counsel, with him, John A. Kane, Chief Counsel, Harrisburg, for appellee.

John W. Wiggins, Chief Asst. City Sol., Philadelphia, for appellant.

Before McGINLEY and KELLEY, JJ., and CRUMLISH, Jr., Senior Judge.

## OPINION

CRUMLISH, Jr., Senior Judge.

Again, this court is confronted with a dispute arising from the funding and placement provisions established pursuant to the Mental Health and Mental Retardation Act of 1966 (Act),[1] which have for some time proved unsatisfactory.[2]

1. Act of October 20, 1966, Special Sess., P.L. 96, *as amended,* 50 P.S. §§ 4104–4704.

2. In *In re Schmidt,* 494 Pa. 86, 429 A.2d 631 (1981), our Supreme Court addressed the dichotomy sought to be achieved in the Act between the Commonwealth and individual counties' responsibility for services where, in a commitment proceeding, the Commonwealth and Allegheny County each disclaimed responsibility for an individual's placement.

  *In re Sauers,* 68 Pa.Commonwealth Ct. 83, 447 A.2d 1132 (1982), *aff'd,* 500 Pa. 342, 456 A.2d 987 (1983), addressed the question of the Commonwealth's obligation to pay for residential services for a mentally retarded woman.

  The federal courts have also discussed the relation between the state's obligation to provide *adequate* mental retardation services and the availability of funding. In *Halderman v. Pennhurst State School & Hospital,* 673 F.2d 647 (3rd Cir.1982), the court stressed the requirement that the Department of Public Welfare make a good faith effort to find funding to satisfy its duties. In *Alessi v. Commonwealth of Pennsylvania Department of Public Welfare,* 893 F.2d 1444 (3rd Cir. 1990), the District Court found, and Court of Appeals agreed, that the Department was not fulfilling its obligations. The District Court concluded that the Department's budgeting process was arbitrary and

In this case, William Emery (Emery) and six others similarly situated, appeal a Philadelphia County Common Pleas Court order granting the preliminary objections of the Commonwealth, Department of Public Welfare (Department) and dismissing the petition of the Philadelphia County Office of Mental Health and Mental Retardation (Philadelphia Office) to join the Department as a necessary party.

At age twenty-five, Emery was admitted to Embreeville State Hospital. After five years there, Emery was transferred to Philadelphia State Hospital, where he was diagnosed with mild retardation, organic brain damage and schizophrenia. In 1983, he was admitted to the Woodhaven Extension Program and was the next year involuntarily committed to the Woodhaven Center, an intermediate care facility for the mentally retarded.

At a 1988 court review[3] administered by Woodhaven's staff psychologist/clinical coordinator, Emery was diag-

found that its practice was to deny adequate provisions without meaningful consideration for actual needs. The Court of Appeals agreed that the Department failed not only to employ good faith in obtaining funds, but also to allocate what funds it received in a rational and equitable manner. *See also Fritz v. White,* 711 F.Supp. 1350 (E.D.Pa.1989), where the District Court labeled these disputes "bureaucratic terrorism" inflicted on clients such as Emery.

This court has been called upon to adjudicate funding disputes between county offices and the Department. In *Department of Public Welfare v. Alessi,* 105 Pa.Commonwealth Ct. 453, 524 A.2d 1052 (1987), we held that Department could not appeal an order directing it to fund a committment when it was not a party to that committment proceeding. In *Department of Public Welfare v. Alessi,* 119 Pa.Commonwealth Ct. 160, 546 A.2d 157 (1988) *allocatur denied,* 524 Pa. 623, 571 A.2d 385 (1989), we held that the Department could not be held in contempt of an order directing funding because the Department had not been made a party and the committing court did not therefore have jurisdiction over it.

Recently, sitting as a single judge of this Court in consideration of a preliminary injunction request, we noted the repeated failure of the Commonwealth to conduct meaningful review of county budget requests based on need. *City of Philadelphia v. Department of Public Welfare,* 128 Pa.Commonwealth Ct. 565, 564 A.2d 271 (1989).

**3.** "Court Review" is the evaluation, performed by the attendant mental institution, of an inmate's background, strengths, weaknesses and progress, administered to determine recommendations for further care or discharge of the inmate.

nosed, evaluated and recommended for discharge to a less restrictive, community residential facility.

Since Emery had been involuntarily committed, the City petitioned the Philadelphia Common Pleas Court for approval to modify the original commitment and transfer him to a community residential facility under Section 406(b) of the Act.[4] The Philadelphia Office, alleging that it was impossible to effectuate Emery's placement without the financial assistance of the Department, sought to join the Department as a necessary party in Emery's recommitment proceeding. The common pleas court dismissed the joinder petition. The court concluded that the Philadelphia Office failed to aver facts sufficient to establish the Department as a necessary party in Emery's placement matter.

The Philadelphia Office now challenges the court's order, and contends that the Department is, as a matter of law, a necessary party to a commitment proceeding, where absent its participation and funding, the office will be unable to effectuate an appropriate commitment.

The Department counters that, pursuant to Section 761 of the Judicial Code, 42 Pa.C.S. § 761, the court of common pleas lacks jurisdiction over the Department. The Department argues, therefore, it could not be joined even if it were determined to be a necessary party.

█ Here, Emery's proposed transfer would require changes in the court's original commitment order, and therefore, necessitate court involvement, thereby appropriately placing this matter within the jurisdiction of the common pleas court. Section 406(b) of the Act. *Depart-*

---

4. Section 406(b), 50 P.S. § 4406(b), provides:
   (b) If, upon examination, it is determined that such person is in need of care at a facility, the examining physicians or director, as the case may be, shall immediately report to said court which may order the commitment of such person for care and treatment.
   In its order of commitment, said court may permit partial hospitalization or outpatient care, or if at anytime thereafter the director shall determine such partial hospitalization or outpatient care to be beneficial to the person so committed, the same may be permitted by said court upon application by the director.

*ment of Public Welfare v. Court of Common Pleas of
Philadelphia County,* 506 Pa. 410, 418, 485 A.2d 755, 759
(1984). Since the common pleas court has jurisdiction in
this matter, it can order joinder of a necessary party, *Ross
v. Keitt,* 10 Pa. Commonwealth Ct. 375, 308 A.2d 906 (1973)
*related order,* 17 Pa. Commonwealth Ct. 183, 331 A.2d 582
(1975), *aff'd, Keitt v. Ross,* 466 Pa. 576, 353 A.2d 841 (1976),
even if that party is a Commonwealth department.
"[T]here may be litigation properly initiated in a court of
common pleas in which, by third-party proceedings, the
Commonwealth, although not an indispensable party, may
conceivably be joined, in which cases the jurisdiction of the
court of common pleas should not be ousted simply because
such third-party procedure was invoked." *Id.* 17 Pa.Com-
monwealth Ct. at 189, 331 A.2d at 584.

■ Hence, we must determine whether the Department
is a necessary party to these commitment proceedings, over
which the common pleas court has jurisdiction.

A necessary party, as defined by our Court in *York-
Adams County Constables Association v. Court of Com-
mon Pleas of York County,* 81 Pa.Commonwealth Ct. 566,
569, 474 A.2d 79, 81 (1984), is one "whose presence, while
not indispensable, is essential if the Court is to completely
resolve the controversy before it and render complete re-
lief."

In its petition to join the Department as a necessary party
pursuant to Section 201 of the Act,[5] the Philadelphia Office
averred that without additional money from the Depart-
ment, care for Emery in a community-based, less restrictive
facility could not be provided. The trial court held that,
absent proof that the Department has failed to assume its

5. Section 201 of the Act, 50 P.S. § 4201, provides, *inter alia,* that the
Department shall have power, and its duty shall be:
    (1) To assure ... the availability and equitable provision of ade-
quate mental health and mental retardation services for all persons
who need them ...
    (7) To make grants, pay subsidies, purchase service and provide
reimbursement for mental health and mental retardation services in
accordance with this act.

obligations under the Act to allocate sufficient funding for services, its inclusion in this placement matter was not necessary.

While Section 201(1) of the Act does require the Commonwealth to provide adequate services for persons in need of them, we conclude that the Philadelphia Office is authorized to make the decision to place Emery *without* joining the Department.

We have noted that, under the present statutory scheme, the county may be relieved of its liability to fund such placement. It may make an application to the Department, which, upon consideration of the application, may take steps to insure the availability of services. Section 508 of the Act; *Allegheny v. Department of Public Welfare*, 61 Pa.Commonwealth Ct. 561, 564, 434 A.2d 866, 867 (1981).[6] A Department decision not to do so may be appealed. *Id.* We recognize that relief under Section 508 of the Act is applicable "only where extraordinary circumstances make it impossible or uneconomical for a county to provide a mandated service despite the provision of funds by the [Department]." *Id.*, 61 Pa.Commonwealth Ct. at 566, 434 A.2d at 868. Here, however, the Philadelphia Office has not shown that it made a Section 508 application for Emery.

Moreover, Section 509(5) of the Act states that "the counties shall be required to provide only those services for

6. Section 508 of the Act, 50 P.S. § 4508, provides:

**Relief of county from obligation to insure service; State's obligation; liability in such cases**

(a) If local authorities cannot insure the availability of any of the services required by Section 301 (Section 4301 of this title, relating to services), or if they assert that it would be economically unsound to do so, such authorities may make application to the department to be relieved for the period of one year from the duty to insure their availability.

. . . . .

(b) If the department after consideration of the application and such independent investigation as it shall deem appropriate determines that the application is justified, it may approve the same, in which event, the department may insure the availability of the service or services specified in the application, for the year specified in the application.

which sufficient funds are available." *Id.*, 61 Pa.Commonwealth Ct. at 566, 434 A.2d at 868. The Philadelphia Office averred in its petition that it lacked sufficient funding to provide aftercare services [7] for Emery. If the common pleas court finds that funding for Emery's recommended placement is not immediately available, that finding will undoubtedly bear on its decision to place him.

A determination of whether Emery is to be committed to a less restrictive community residential setting can be made without resort to the question of whether the Philadelphia Office or the Department is obligated *to pay* for that commitment. The commitment modification decision is a legal determination involving Emery's rights to, and need for, certain services and a certain type of placement. *In re Schmidt.* Those rights and the necessity of services can be adjudicated independent of any determination of who is obligated to pay for them. *Id.* Thus, the legal issue of whether Emery's commitment is to be modified can be resolved without the Department's presence.

However, to hold that a costly remedy is available to Emery, for which there are no means, is to ignore reality. We are loath to render a decision which, practically speaking, leaves the Philadelphia Office or the clients it serves without adequate financial relief. We simply state herein that the common pleas court was correct in its determination that a commitment modification proceeding is not the forum in which to seek that relief.

We repeat the federal circuit court's admonition in *Alessi,* that "when considering the obligation to provide funding for mental retardation services, the [Department] is expected to make a good faith effort to find funding for such services." 893 F.2d at 1450 (citing *Pennhurst*). We are also mindful of our Supreme Court's holding in *Schmidt,* that a mere recitation that funds or facilities were not

7. " 'Aftercare' means services rendered to a person after his release from a facility, designed to assist him or her to establish and maintain his or herself as a member of society, including foster home placement, home visiting, observation, halfway houses and outpatient care." Section 102 of the Act, 50 P.S. § 4102.

available was insufficient to satisfy the Department's duty to provide needed services.

Under Section 508, if the Philadelphia Office cannot insure the availability of services, it may seek relief by asking the Department to assume its obligation for a time. The Philadelphia Office may also seek additional funding under Section 201 of the Act, which *expressly* imposes a *duty* on the Department to assure that the actual needs of its clients are adequately and equitably provided for. If Emery's commitment modification is ordered by the court, it cannot be argued that those services are not actually needed. The law provides a remedy for the breach of the Department's obligation if that breach is proved. Thus, because the Philadelphia Office has recourse to resolve the separate issue of whether the Department is obligated to pay for needed services, it was not necessary to join the Department in the commitment proceedings below.

Accordingly, we affirm the trial court's order dismissing the Philadelphia Office's joinder petition.

## ORDER

Now, April 3, 1991, the order of the Philadelphia Common Pleas Court, March Term, 1983, at No. 2662, dated September 22, 1989, is affirmed.