**In re Bobbie Jean BISHOP, a minor.**

**Appeal of DEPARTMENT OF PUBLIC WELFARE and Mayview State Hospital, Appellants.**

Commonwealth Court of Pennsylvania.

Argued June 10, 1998.

Decided Sept. 17, 1998.

actually occurs on p. 35 of the deposition.

# 1116

Jeffrey P. Schmoyer, Pittsburgh, for appellants.

Amy M. Dolan, Asst. County Solicitor, for appellee.

Before COLINS, President Judge and DOYLE, McGINLEY, PELLEGRINI, KELLEY, FLAHERTY and LEADBETTER, JJ.

COLINS, President Judge.

The Pennsylvania Department of Public Welfare (DPW) and Mayview State Hospital (Mayview) appeal from the orders of the Court of Common Pleas of Allegheny County joining them as indispensable parties in the commitment of Bobbie Jean Bishop, directing Mayview to admit Bishop or face contempt proceedings, and directing that Bishop be transported to Mayview.

On August 21, 1997 the court of common pleas ordered that Bishop be committed involuntarily to Mayview for a period of 180 days pursuant to Section 305 of the Mental Health Procedures Act (MHPA).[1] As of that date, Bishop was just a few months short of her 18th birthday. In attendance at the commitment hearing were Bishop and her counsel, Allegheny County mental health authorities, and Dr. Burton Singer,[2] Bishop's treating psychiatrist at St. Francis Medical Center. The court ordered Bishop's commitment to Mayview based on the recommendation of her treating psychiatrist and based on Bishop's willingness to be committed at Mayview. Although the court was aware of, and considered, DPW and Mayview's policy against admitting patients under the age of 18, the judge ordered commitment to Mayview for adult treatment in view of Bishop's history of treatment at that hospital and her approaching 18th birthday.

In violation of the court's commitment order, Mayview refused to admit Bishop for treatment and arranged for her transportation to Southwood Psychiatric Hospital. Mayview's violation of the commitment order prompted a series of hearings in connection with Bishop's involuntary commitment at which Mayview and DPW asserted that they were not parties to the proceeding, were not subject to the court's jurisdiction, and could not be compelled to admit a patient for court-ordered involuntary treatment. On September 17, 1997, the trial court joined DPW and Mayview as indispensable party defendants and ordered Bishop transferred to Mayview. DPW and Mayview immediately filed their notice of appeal.

On appeal, DPW and Mayview raise the following issues: 1) whether the MHPA gives a court of common pleas jurisdiction to compel a state mental hospital to admit a patient when the hospital has determined that the patient is "inappropriate for treatment"; and 2) whether the MHPA gives a court of common pleas jurisdiction to join DPW, a Commonwealth agency, and Mayview, a state mental hospital, as indispensable parties in a commitment proceeding. The parties concede that these questions, as they relate to Bishop, are moot; however, the Court has discretion to decide substantial questions, otherwise moot, that are capable of repetition unless settled. *Colonial Gardens Nursing Home, Inc. v. Bachman,* 473 Pa. 56, 373 A.2d 748 (1977).

The Mental Health and Mental Retardation Act of 1966 (MH/MR Act)[3] and the MHPA govern county mental health programs and procedures for commitment of mentally ill persons. The MH/MR Act confers upon DPW the power and duty to assure the availability of mental health services; to make and enforce regulations; to assist coun-

---

**1.** Act of July 9, 1976, P.L. 817, *as amended,* 50 P.S. § 7305. This section of the Act provides for extended periods of court-ordered involuntary treatment based on the patient's conduct during his or her most recent period of court-ordered treatment. The record reveals that Bishop's most recent court-ordered treatment consisted of a 90–day period of treatment at St. Francis Medical Center beginning on June 5, 1997. The record shows that Bishop has been admitted to either voluntary or involuntary in-patient treat-

ment almost continuously at least since early 1994.

**2.** The hearing transcript designates Bishop's treating psychiatrist as Dr. Singer and also as Dr. Singerman.

**3.** Act of October 20, 1966, Special Sess. No. 3, P.L. 96, *as amended,* 50 P.S. §§ 4101–4704.

ties in carrying out their mental health programs; to operate state mental health facilities; to supervise mental health facilities, services, and programs; in addition to some other administrative and financial functions. Section 201, 50 P.S. § 4201. DPW operates all state facilities and assigns their functions. Section 202 of the MH/MR Act, 50 P.S. § 4202.

Local authorities[4] establish county mental health programs under the MH/MR Act and appoint county administrators. Sections 202 and 304, 50 P.S. § 4202 and § 4304. Among the duties of the county administrator is to designate facilities to provide mental health services within catchment areas[5] under his or her jurisdiction and to designate which facilities are available for involuntary treatment. 55 Pa.Code §§ 4200.32(12), 5100.12(f). The administrator designates appropriate facilities to which a court may commit patients either by way of a blanket notification or on an ad hoc basis. 55 Pa.Code § 4210.12. The administrator arranges for all professional and nonprofessional staff necessary to providing all mental health services, 55 Pa.Code § 4210.21, and that staff is responsible for developing and carrying out a comprehensive treatment program, coordinating patient services, and maintaining continuous liaison with state facilities. 55 Pa.Code § 4210.22.

■■■ Articles II and III of the MHPA confer jurisdiction on the courts of common pleas over voluntary and involuntary commitments. Sections 201 to 306, 50 P.S. §§ 7201–7306. Court-ordered involuntary commitment is made to the facility designated by the county administrator, with input from the patient's treating physicians and other members of the treatment team. 55 Pa.Code §§ 5100.86(h), 5100.87–.89. By virtue of this statutory jurisdiction over court-ordered commitments, the courts of common pleas also have jurisdiction to order commitment to

any approved facility designated within a given service area; by its participation in the county mental health program, a mental health facility is subject to the terms of the MH/MR Act and MHPA for the purposes of receiving and treating court-committed patients. Under the terms of these statutes, when a court orders treatment at a designated state mental hospital, the designated facility must admit the patient for treatment; at that time, the facility is without recourse to deny admission.

■■■ The MH/MR Act and the MHPA contain ample provisions for coordination of services between DPW and the county administrator as to the approval of facilities and their functions, and for coordination among the county administrator, county mental health authorities, and the approved facilities designated to provide treatment within a service area as to admissions policies and patient-appropriate treatment. Although DPW may designate a state mental hospital's functions—and in the case of Mayview, terminate its adolescent treatment program—it has no authority under either statute to designate the facility for a court-ordered commitment or to override, case by case, a designation of treating facility made by the county authorities and the patient's treating psychiatrist. When the director of a facility or a member of its professional staff determines for clinical reasons that admission, or continued treatment, of a patient is not appropriate, the patient may be transferred according to the strict procedures set forth in the MHPA and the regulations.[6] Disputes between the county administrator and DPW or a hospital director as to facility designations should be resolved among those parties; a facility cannot simply refuse to admit a court-committed patient.

---

4. County commissioners, city councils, mayors of first class cities, or two or more of these acting in concert. Section 102 of the MH/MR Act, 50 P.S. § 4102.

5. Catchment area refers to the geographical territory of a city, county, or combination of counties with population of 75,000 to 200,000 in which a full range of mental health services is available. 55 Pa.Code § 4210.1.

6. Section 306 of the MHPA, 50 P.S. § 7306, and 55 Pa.Code § 5100.90 provide for transfer of court-committed patients in coordination with the county administrator and mental health authorities responsible for ensuring continuity of care and availability of services.

In this case, common pleas was within its jurisdiction to order that Bishop be committed to Mayview based on the recommendations of county authorities and Bishop's treating psychiatrist. The court and the mental health professionals in attendance at the proceeding acknowledged Mayview's lack of a treatment program for adolescents, but the court agreed to order commitment to Mayview based on their professional recommendation, and given Bishop's state of mind, her treatment history at Mayview, and the fact that she did not need an adolescent program. Accordingly, Mayview had no recourse but admit Bishop for treatment, and it acted in contempt of the commitment order by arranging for Bishop's transfer to another facility without following the procedures set forth in the MHPA.

Within the scope of its subject matter jurisdiction, a court of common pleas has inherent power to enforce its own orders and judgments. When Mayview failed to admit Bishop in accordance with the commitment order, the court had the inherent power to cite Mayview for contempt. The court need not have joined DPW and Mayview as indispensable parties in order to enforce its orders.[7]

In *Commonwealth v. Alessi*, 119 Pa. Cmwlth. 160, 546 A.2d 157 (Pa.Cmwlth.1988), *petition for allowance of appeal denied*, 524 Pa. 623, 571 A.2d 385 (1989), we addressed the issue of whether a court of common pleas, in the context of a commitment proceeding, had personal jurisdiction over DPW and its Secretary when it ordered DPW to fund the care of a patient committed involuntarily. We held that the court did not have personal jurisdiction to order DPW and its Secretary to do anything and therefore could not hold them in contempt for failure to obey.

This case is distinguishable both on its facts and in its resolution. In this case, the court ordered commitment to a designated state mental hospital on the recommendation of the county administrator and the patient's treating physician as provided in the MHPA. The court therefore had the power to enforce its order by holding the hospital in contempt. In *Alessi*, we held that the common pleas court had no authority under the MH/MR Act to order that DPW fund the ordered commitment care and consequently no authority to enforce that order. In this case, we hold only that Mayview had no choice but to obey the commitment order and that the court of common pleas had the authority to enforce its order; we do not address the court's jurisdiction over DPW or its authority to cite DPW for contempt.

## ORDER

AND NOW, this 17th day of September, 1998, the order of the Court of Common Pleas of Allegheny County joining DPW and Mayview as indispensable parties is reversed. The order directing Mayview to admit Bishop or face contempt charges and the transportation order are affirmed.

LEADBETTER, Judge, concurring.

I concur in the result reached by the majority because I find that the comprehensive nature of the Mental Health Procedures Act[1] mandates a conclusion that the legislature intended to vest exclusive subject matter jurisdiction in the courts of common pleas over all necessary steps in the commitment process. I also find it mandates the further conclusion that common pleas has ancillary personal jurisdiction over those government agencies charged with major roles in the statutory scheme set forth in the Act. Were we to accept the Department's argument that the order and contempt proceedings at issue here should be deemed "proceedings against an officer of the Commonwealth government" within our sole original jurisdiction[2], this statutory scheme would be disrupted in contravention of the legislature's clear intent.

---

7. Because the court of common pleas need not have joined Mayview and DPW as indispensable parties in order to enforce its commitment order, we do not address their claim that naming them as indispensable party defendants brought this matter within the exclusive jurisdiction of Commonwealth Court.

1. Act of July 9, 1976, P.L. 817, *as amended*, 50 P.S. § 7101 *et seq.*

2. 42 Pa.C.S. § 761(a)(1).

Consequently, I agree with the majority that the trial court need not have joined the Department and Mayview as indispensable parties in order to implement orders issued pursuant to the Act, and that it had subject matter jurisdiction to enforce those orders against Commonwealth parties statutorily involved in the commitment process.

KELLEY, J., joins in this concurring opinion.

FLAHERTY, Judge, dissenting.

I respectfully dissent. The trial court in this case ordered Mayview and DPW to be joined as indispensable parties. Whenever a Commonwealth agency is joined as an indispensable party-defendant such joinder invokes this Court's exclusive original subject matter jurisdiction and pro tanto divests the courts of common pleas of subject matter jurisdiction. *See CRY, Inc. v. Mill Service Inc.,* 536 Pa. 462, 640 A.2d 372 (1994); *Yezerski v. Fong,* 58 Pa.Cmwlth. 566, 428 A.2d 736, 738 (Pa.Cmwlth.1981). Thus, because the trial court ordered DPW and Mayview to be joined as indispensable party-defendants, the trial court was divested of subject matter jurisdiction with respect to DPW and Mayview. Hence, by the trial court's own order, it divested itself of jurisdiction and thus should not have proceeded further with respect to the DPW and Mayview. Because the trial court did proceed further with respect to DPW and Mayview, it committed error and should be reversed. Because the majority affirms, I dissent.

By deciding that the trial court need not have joined DPW and Mayview as indispensable party-defendants, the majority attempts to avoid the clear rule of law that when Commonwealth parties are joined as indispensable party-defendants, the trial court is thereby divested pro tanto of subject matter jurisdiction. However, even accepting the majority's reasoning for the sake of argument, while the trial court may not have **needed** to join DPW and Mayview as indispensable parties, the trial court did in fact do so. Having joined DPW and Mayview as indispensable parties, the trial court was divested pro tanto of subject matter jurisdiction thereby. *See CRY.*

If the majority means to say that the trial court erred in joining DPW and Mayview as indispensable parties, then the majority ought to say so and ought to offer an analysis as to why they are not indispensable parties. If indeed that is what the majority intended to say, I respectfully disagree. I believe that the DPW and Mayview are indispensable parties to this action.

If a Commonwealth entity is an indispensable party, then this Court's exclusive original subject matter jurisdiction is invoked thereby ousting the court of common pleas subject matter jurisdiction over the Commonwealth parties pro tanto. *CRY.* If however, a Commonwealth entity is merely a "necessary" party, as the County argues, then the common pleas court's subject matter jurisdiction is not ousted and that court may proceed. *In re Emery,* 138 Pa.Cmwlth. 668, 589 A.2d 283 (Pa.Cmwlth.1991). In order to determine whether a party is indispensable or not, our Supreme Court set forth the following test in *CRY*:

1) Do the absent parties have a right or interest related to the claim?

2) If so, what is the nature of that right or interest?

3) Is that right or interest essential to the merits of the issue?

4) Can justice be afforded without violating the due process rights of absent parties?

In order to determine whether a Commonwealth entity is a necessary party, this Court has stated the test as a party "whose presence, while not indispensable, is essential if the Court is to completely resolve the controversy before it and render complete relief." *Emery,* 589 A.2d at 285, *quoting, York–Adams County Constables Assoc. v. Court of Common Pleas of York County,* 81 Pa. Cmwlth. 566, 474 A.2d 79, 81 (Pa.Cmwlth. 1984).

This action seeks to compel Mayview, a state hospital to admit and treat a patient. I believe that Mayview's interests in such an action are manifest and weighty and that compelling it to admit and treat a patient over its objections without it being joined as a party to the involuntary commitment proceedings violates Mayview's due process

rights. This action also seeks to compel DPW to cooperate in the admission and the treatment of Bobbie Jean Bishop at Mayview. DPW is a Commonwealth entity charged with the statewide responsibility to assure the availability of appropriate mental health services to needy individuals, to operate state mental health facilities for the benefit of patients and to assign the functions of state mental health facilities, *See* The Mental Health and Mental Retardation Act of 1966 (MH/MR Act).[1] Although perhaps not as clear as Mayview's rights, nevertheless, I believe that DPW's rights also would be violated without it being joined as a party to the involuntary commitment proceedings.

Instead of determining whether DPW and Mayview are indispensable parties, the majority reasons that because the trial court has subject matter jurisdiction over involuntary commitments and because the trial court has inherent jurisdiction to enforce its orders, it thereby has subject matter jurisdiction to compel a Commonwealth entity, Mayview, to admit a patient on pain of contempt. There are several problems with the majority's reasoning.

First, at the very least, the majority should conduct the *CRY* analysis to determine whether Mayview and the DPW are indispensable parties in order to determine whether this Court's original exclusive subject matter jurisdiction is invoked, thereby ousting the common pleas court's subject matter jurisdiction pro tanto. The majority cannot conclude that the court of common pleas has subject matter jurisdiction here without first determining that DPW and/or Mayview are **not** indispensable parties. That is to say, the majority cannot conclude that the court of common pleas has subject matter jurisdiction here without first analyzing whether this Court has exclusive original subject matter jurisdiction. If, in fact, DPW and/or Mayview are indispensable parties,

then the jurisdiction of the court of common pleas is ousted to that extent, notwithstanding its general jurisdiction over civil commitments and its inherent power to enforce its own orders, and this Court's exclusive original subject matter jurisdiction is invoked. Because the majority fails to perform this necessary analysis, I must dissent.[2]

Second, the legislature has seen fit to specifically provide that the Commonwealth Court shall have original exclusive jurisdiction of all civil actions or proceedings "[a]gainst the Commonwealth government, including any officer thereof, acting in his official capacity" except in enumerated circumstances not here relevant. 42 Pa.C.S. § 761. The majority is not able to point to any specific statutory grant of jurisdiction in either the Mental Health Procedures Act (MHPA)[3] or the MH/MR Act which permits the courts of common pleas to exercise jurisdiction over a Commonwealth entity. The only provisions which the majority can muster is the general grant of jurisdiction to the courts of common pleas over civil commitments and a court's inherent power to enforce its orders. Jurisdiction in this case is a matter of statute. Thus, at bottom, this matter comes down to an issue of what the legislature intended to be the respective jurisdiction of this Court and of the courts of common pleas in cases like this. Hence, as this is a matter of statute and there is some doubt as to the meaning of the competing statutory provisions, rules of statutory construction apply. And those rules instruct us that where there is a conflict between general provisions and specific provisions, the specific provisions are to control. 42 Pa.C.S. § 1933. Here, the specific provisions of 42 Pa.C.S. § 761 should control over the general provisions of the MHPA.[4]

Moreover, merely because a court of common pleas has subject matter jurisdiction over the issue of whether a particular indi-

---

**1.** Act of October 20, 1966, Special Session, No. 3, P.L. 96, *as amended*, 50 P.S. §§ 4101–4704.

**2.** The majority's result can only be justified if the majority opinion is read as a sub silentio determination that either Mayview or DPW or both are not indispensable parties. Such a determination should not be made without a careful and explicit analysis of the issue, especially in light of

the fact that the trial court determined that Mayview and DPW were indispensable parties.

**3.** Act of July 9, 1976, P.L. 817, *as amended*. 50 P.S. §§ 7101–7503.

**4.** Likewise, contrary to the concurring opinion, I fail to divine from the general provisions of the MHPA, either individually or collectively, a legislative intent to grant the courts of common pleas

vidual should involuntarily submit to treatment, it does not necessarily follow as a matter or logic or of law that the court of common pleas has subject matter jurisdiction to order a Commonwealth entity to admit a particular individual as the majority seems to think. While it is true that courts have inherent power to enforce their orders, such inherent power is not unlimited and is bounded by limits on the court's jurisdiction and by applicable law. In this case, the common pleas court's inherent power to enforce its order requiring Bobbie Jean Bishop to undergo involuntary treatment is limited by the jurisdictional bar to such a court exercising subject matter jurisdiction over a Commonwealth entity.

Indeed, the heart of the majority's reasoning in support of its disposition in this matter is that

[b]y virtue of this statutory jurisdiction over court-ordered commitments, the courts of common pleas also have jurisdiction to order commitment to any approved facility designated within a given service area; by its participation in the county mental health program, a mental health facility is subject to the terms of the MH/MR Act and MHPA for the purposes of receiving and treating court-committed patients. Under the terms of these statutes, when a court orders treatment at a designated state mental hospital, the designated facility must admit the patient for treatment; at that time, the facility is without recourse to deny admission.

Majority op. at p. 1117. Interestingly, the majority fails to point out which specific "terms of these statutes" provide that when a court of common pleas orders treatment at a state mental hospital, the designated facility must admit the patient for treatment. Perhaps, it is because there are no such terms in the statutes. At least my reading of the statutes fails to reveal such terms.

For the foregoing reasons, I must dissent.

jurisdiction over Commonwealth entities when the legislative intent could not be made clearer than its explicit specific words enacted at 42

Pa.C.S. § 761 granting to this Court exclusive original subject matter jurisdiction in civil actions against Commonwealth entities.