**DEVEREUX HOSPITAL TEXAS TREATMENT NETWORK (TIMBERS), Petitioner**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 10, 2005.
Decided July 12, 2005.

Guy Vilim, Philadelphia, for petitioner.

Helene Eichenwald Loux, Harrisburg, for respondent.

BEFORE: FRIEDMAN, J., JUBELIRER, J., and FLAHERTY, Senior Judge.

OPINION BY Judge FRIEDMAN.

Devereux Hospital Texas Treatment Network (Devereux Hospital) petitions for review of the April 6, 2001, order of the Secretary of the Department of Public Welfare (DPW), which upheld an order of the Bureau of Hearings and Appeals (Bureau) adopting the recommendation of a Hearing Officer and denying Devereux Hospital compensation for inpatient treatment rendered to K.T. We vacate and remand.

K.T. was admitted to Devereux Hospital on March 26, 1997, pursuant to a court order dated March 11, 1997.[1] The court placed K.T. at Devereux Hospital because of K.T.'s polysubstance dependence and a psychotic disorder. As of August 27, 1997, staff at Devereux Hospital believed that K.T.'s condition had changed to the point where he was an appropriate patient for an alternate level of care. Devereux Hospital discharged K.T. on October 20, 1997. (Findings of Fact, Nos. 1–3, 8–10.)

Devereux Hospital applied for an out-of-state provider agreement with DPW, which was approved on August 27, 1997. DPW designated Devereux Hospital a Type 13 Medical Assistance (MA) Provider, which is an acute, private, psychiatric hospital or unit. Devereux Hospital then sought compensation from DPW for the services rendered to K.T. from August 27, 1997, through October 20, 1997. In a letter dated December 1, 1998, DPW denied the request. Devereux Hospital filed a timely appeal, and a hearing was held before a Hearing Officer for the Bureau. (Findings of Fact, Nos. 4, 6, 11, 12.)

After considering the evidence presented, the Hearing Officer recommended that DPW deny the appeal. The Hearing Officer explained that "a provider is not entitled to reimbursement for days of care for recipients who are appropriate for an alternate level of care," and K.T. became an appropriate patient for an alternate level of care on August 27, 1997. (Hearing Officer's op. at 5–6.) The Bureau adopted the Hearing Officer's recommendation by order dated May 19, 2000. Devereux Hospital filed an application for reconsideration, which the Bureau granted. However, by order dated April 6, 2001, DPW upheld the May 19, 2000, order.

Devereux Hospital filed a petition for review with this court, which reversed. This court explained that the court order committing K.T. to Devereux Hospital constituted a legal determination that K.T. was suitable for placement in Devereux Hospital, and, until the court issued a subsequent order declaring K.T. suitable for an alternate level of care, K.T. was not suitable for alternate care as a matter of law. *Devereux Hospital Texas Treatment Network v. Department of Public Welfare,* 797 A.2d 1037 (Pa.Cmwlth.2002), *aff'd in part, rev'd in part and remanded,* 579 Pa. 313, 855 A.2d 842 (2004) (*Devereux I*).

DPW filed a petition for review with our supreme court, which affirmed this court's determination with respect to K.T. *Department of Public Welfare v. Devereux Hospital Texas Treatment Network,* 579 Pa. 313, 855 A.2d 842 (2004) (*Devereux II*). However, our supreme court remanded the

---

1. K.T. was committed to Devereux Hospital pursuant to section 6352 of the Juvenile Act, 42 Pa.C.S. § 6352, after a finding of delinquency under section 6341(b) of the Juvenile Act, 42 Pa.C.S. § 6341(b). A finding of delinquency involves a finding as to whether the child is in need of treatment. 42 Pa.C.S. § 6341(b).

case for consideration of DPW's argument that Devereux Hospital's treatment of K.T. was not compensable because it was medically unnecessary; the court also remanded the case for consideration of any other properly-preserved argument supporting DPW's denial of payment. *Id.* With respect to the medical necessity issue, the court suggested that this court could either address the issue or remand to the Hearing Officer for consideration. *Id.*

## I. Waiver

■ As a preliminary matter, DPW argues that Devereux Hospital waived the medical necessity issue on remand by failing to identify the issue in the "Statement of Questions Involved" portion of its brief. We disagree.

Pa. R.A.P. 2116(a) states that ordinarily no point will be considered which is not set forth in the statement of questions involved or suggested thereby. Devereux Hospital's statement of questions involved asks:

> Was it proper for DPW to deny Medical Assistance payment to Devereux when Devereux complied with applicable regulations for obtaining payment by submitting both a correct original invoice and a correct resubmitted invoice within DPW's prescribed timeframes?

2. We note that Devereux Hospital specifically argues in its brief that the treatment it rendered to K.T. during the relevant period was "medically necessary."

3. DPW's position, as stated to the Hearing Officer, is that the inpatient treatment of K.T. from August 27, 1997, to October 20, 1997, "was not medically necessary because [K.T.] was more appropriate for transfer to an alternate level of care." (Hearing Officer's op. at 3.) However, this court, affirmed by our supreme court, held that, because the court commitment order remained in effect on August 27, 1997, K.T., as a matter of law, was *not* suitable for an alternate level of care.

(Devereux Hospital's brief at 2.) Although this "statement" does not specifically reference the medical necessity issue, the "statement" does question DPW's denial of payment after Devereux Hospital properly submitted invoices. That general question suggests a challenge to *any* reason DPW might offer for the denial, including that the treatment was "medically unnecessary."[2] Thus, we conclude that Devereux has not waived the medical necessity issue.

## II. "Medically Unnecessary" Treatment

■ We now address and reject DPW's argument that it properly denied Devereux Hospital's request for compensation because the treatment of K.T. from August 27, 1997, to October 20, 1997, was not medically necessary.[3]

DPW's regulation at 55 Pa.Code § 1101.61 states that DPW will pay only for "medically necessary" compensable services. The regulation at 55 Pa.Code § 1101.66(a)(2) states that DPW will pay for compensable services rendered by a provider if the service is "[m]edically necessary." The regulation at 55 Pa.Code § 1151.48(a)(7) states that DPW will pay for services provided to recipients confined to an inpatient psychiatric facility under a court commitment "only if medical necessity exists...."[4] The term "medically necessary" means:

Thus, the position on medical necessity articulated by DPW before the Hearing Officer is untenable. In fact, our supreme court pointed out that asking whether K.T. was suitable for alternate treatment from August 27, 1997, to October 20, 1997, is not the same as asking whether K.T. was receiving medically necessary treatment during that period. *See Devereux II.*

4. In addition, the regulation at 55 Pa.Code § 1151.48(a)(9) states that DPW will not pay for days of care due to conditions "which do not require psychiatric inpatient care."

A service, item, procedure or level of care that is: (i) Compensable under the Medical Assistance Program. (ii) Necessary to the proper treatment or management of an illness, injury or disability. (iii) Prescribed, *provided* or ordered *by an appropriate licensed practitioner in accordance with accepted standards of practice.*

55 Pa.Code § 1101.21 (emphasis added). The regulations at 55 Pa.Code § 1101.51(d)(1)(iii) and § 1101.51(e)(1)(x), which govern standards of practice for medical records, require that a provider keep medical records that contain documentation of the medical necessity of a rendered service.

DPW argues that the treatment Devereux Hospital provided to K.T. after August 27, 1997, did not meet prongs (ii) and (iii) of the above definition of "medically necessary." With respect to prong (ii), this court has stated that a court commitment order is a legal determination of the patient's *need* for certain services. *In re Emery,* 138 Pa.Cmwlth. 668, 589 A.2d 283 (1991). Moreover, in this case, K.T. was committed to Devereux Hospital for treatment following a finding of delinquency, and a finding of delinquency involves a finding as to whether the child is in *need* of treatment. *See* section 6341(b) of the Juvenile Act, 42 Pa.C.S. § 6341(b). Thus, here, the commitment order was a legal determination that K.T. needed the treatment offered by Devereux Hospital.[5] Because the commitment order remained in effect on August 27, 1997, the treatment K.T. received as of that date was necessary as a matter of law.

With respect to prong (iii), DPW argues that Devereux Hospital's medical records do not contain documentation of the medical necessity of the services rendered to K.T. (DPW's brief at 16–17.) However, Devereux Hospital's records contain the commitment order, i.e., a legal determination of K.T.'s need for the inpatient psychiatric services rendered by Devereux Hospital. Thus, Devereux Hospital's records do contain documentation of the medical necessity of the services it rendered to K.T.[6]

### III. Other "Need" Regulations

■ DPW next argues that it properly denied Devereux Hospital's request for compensation because the treatment of K.T. from August 27, 1997, to October 20, 1997, exceeded K.T.'s need for treatment. We disagree.

The regulation at 55 Pa.Code § 1101.66(a)(3) states that DPW will pay for compensable services rendered by a provider if the service is not in an amount that exceeds the recipient's needs. Here, Devereux Hospital is a provider who rendered services from August 27, 1997, to October 20, 1997, and there was a court commitment order indicating that K.T. needed those services. Thus, DPW could not deny compensation to Devereux Hospital on this basis.

■ The regulation at 55 Pa.Code § 1151.48(10) states that DPW will not pay for days of care for recipients "who no longer require psychiatric inpatient care." However, because the court commitment order remained in effect, K.T. required

---

**5.** If a hospital disagrees with a court's determination of a patient's need for a certain type of treatment and attempts to transfer the patient, the hospital would be in held in contempt. *In re Bishop,* 717 A.2d 1114 (Pa. Cmwlth.1998), *appeal denied,* 558 Pa. 642, 738 A.2d 458 (1999).

**6.** To the extent that DPW argues otherwise, our supreme court already has ruled that a legal determination encompassed by a court commitment order supersedes any contrary factual determination. *Devereux II.*

psychiatric inpatient care, as a matter of law, from August 27, 1997, to October 20, 1997. Thus, DPW could not deny compensation to Devereux Hospital on this basis.

■ The regulation at 55 Pa.Code § 1151.48(a)(12) states that DPW will not pay for grace periods, "such as pending discharge of a recipient when inpatient hospital care is no longer needed." The Hearing Officer found that the period from August 27, 1997, to October 20, 1997, represented a delay in discharge. (Findings of Fact, No. 7; Hearing Officer's op. at 6.) However, the court commitment order was in effect during that period; thus, as a matter of law, inpatient hospital care was needed. *See* 42 Pa.C.S. § 6341(b). Because the period in question did not represent a delay in discharge when inpatient hospital care was no longer needed, DPW could not deny compensation to Devereux Hospital on this basis.[7]

### IV. Out–of–State Requirements

■ Finally, DPW argues that it properly denied Devereux Hospital's request for compensation under 55 Pa.Code § 1151.50(a)(2)(ii) because Devereux Hospital did not submit documentation to show that an out-of-state psychiatric hospital was the only facility equipped to provide the type of care K.T. required.

The regulation at 55 Pa.Code § 1151.50(a)(2)(ii) states that DPW will pay for compensable services furnished by out-of-state private psychiatric hospitals if documentation is provided verifying that an "out-of-state private psychiatric hospital is the only facility equipped to provide the

type of care that the individual requires." Initially, we note that the Hearing Officer did not rely on this regulation in upholding DPW's denial of compensation to Devereux Hospital for its treatment of K.T. Thus, the Hearing Officer made no findings of fact or conclusions of law in this regard. As a result, it is necessary for us to vacate and remand for a proper determination as to whether Devereux Hospital complied with the regulation.

In considering the scope of the remand, we note that, in *Devereux II*, our supreme court discussed 55 Pa.Code § 1151.50(a)(2)(ii) in connection with Devereux Hospital's request for compensation for the treatment of two other persons. Specifically, our supreme court considered whether a court commitment order, by itself, is sufficient documentation to establish that an out-of-state private psychiatric hospital is the only facility equipped to provide the type of care that a patient requires. Our supreme court concluded that a court commitment order definitively establishes only that the selected facility is the best suited facility of those about which the court was advised. *Devereux II*. Thus, by itself, a court commitment order does not establish that the selected facility is the only facility equipped to provide the type of care that the individual requires. *Id.*

Here, Devereux Hospital presented as evidence the court commitment order and a list of nine in-state residential treatment facilities which rejected K.T. as a patient before the court placed K.T. at Devereux Hospital. (*See* R.R., Vol. I, at 185.) However, there is no evidence in the record indicating whether or not the nine facilities

---

7. We realize that, in *Mercy Hospital v. Department of Public Welfare,* 89 Pa.Cmwlth. 192, 492 A.2d 104 (1985), this court held that DPW properly denied reimbursement to a hospital for a period representing a delay in discharge when inpatient care was no longer needed. However, there was no court commitment order in that case, and our supreme court made clear in *Devereux II* that, although medical staff may determine that a patient is suitable for discharge, the patient is *not* suitable for discharge as a matter of law if a court commitment order states otherwise. *See Devereux II; see also In re Bishop.*

represent the only in-state facilities that, at the time of the court commitment, provided the type of care K.T. required.[8] In *Devereux II*, with respect to other Pennsylvanians treated at Devereux Hospital, our supreme court stated that "we in no way fault Devereux for the lack of record documentation establishing that in-state placement options were exhausted before [Pennsylvania patients] were placed at Devereux."[9] *Devereux II*, 579 Pa. at 327–28 n. 15, 855 A.2d at 851 n. 15. Thus, on remand, the Hearing Officer shall take additional evidence as to whether the court considered all in-state placement options before placing K.T. at Devereux Hospital.[10]

Accordingly, we vacate DPW's order and remand this case to DPW for a hearing to take additional evidence, for necessary findings of fact and conclusions of law and for a determination as to whether the court committed K.T. to Devereux Hospital after considering all in-state placement options and after determining that Devereux Hospital was the only facility equipped to provide the type of care that K.T. required.[11]

### ORDER

AND NOW, this 12th day of July, 2005, the order of the Secretary of the Department of Public Welfare (DPW), dated April 6, 2001, is hereby vacated, and this case is remanded to DPW for the purposes set forth in the foregoing opinion.

Jurisdiction relinquished.

8. We note that, in K.T.'s case, the parties incorporated testimony from another case on the out-of-state facility issue. (R.R., Vol. I, at 149.) Thus, there is no evidence specifically addressing whether the nine in-state facilities considered by the court in K.T.'s case represented the only in-state facilities offering the type of care that K.T. required.

9. Indeed, Devereux Hospital was not a party to the commitment proceedings; thus, Devereux Hospital did not have the burden of proving that in-state facilities had been exhausted and that Devereux Hospital was the only facility equipped to provide the type of care that K.T. required.

10. Because 55 Pa.Code 1151.50(a)(2)(ii) requires that, to obtain compensation, a health care provider must submit documentation to show that the out-of-state psychiatric hospital was the only facility equipped to provide the type of care required, the burden of proof will be on Devereux to show that the nine in-state facilities considered at the court commitment proceedings were the only in-state facilities that, at the time, provided the type of care K.T. required.

11. We reiterate here our supreme court's statement that, if it is ultimately determined that Devereux Hospital is not entitled to reimbursement from DPW, Devereux Hospital may seek reimbursement from the Philadelphia Department of Human Services. *See Devereux II*.