DEVEREUX HOSPITAL TEXAS
TREATMENT NETWORK
(Clinkscales), Petitioner,

v.

DEPARTMENT OF PUBLIC
WELFARE, Respondent.

Devereux Hospital Texas Treatment
Network (Timbers), Petitioner,

v.

Department of Public Welfare,
Respondent.

Devereux Hospital Texas Treatment
Network (Brinkley), Petitioner,

v.

Department of Public Welfare,
Respondent.

Commonwealth Court of Pennsylvania.

Argued March 12, 2002.
Decided April 15, 2002.
Reargument Denied June 5, 2002.

Guy P. Vilim, Philadelphia, for petitioner.

Catherine Stewart, Harrisburg, for respondent.

BEFORE: SMITH–RIBNER, J., FRIEDMAN, J., and KELLEY, Senior Judge.

OPINION BY Judge FRIEDMAN.

Devereux Hospital Texas Treatment Network (Devereux) petitions for review of an April 6, 2001 order and two April 9, 2001 orders of the Secretary of the Department of Public Welfare (DPW). These orders upheld three orders of the Bureau of Hearings and Appeals (Bureau), dated May 19, 2000, adopting the recommendation of a Hearing Official to deny Devereux compensation for inpatient treatment rendered to Keith Clinkscales, Khalid Timbers and Hakeem Brinkley. We reverse.

Clinkscales was admitted to Devereux's psychiatric facility in Texas on March 26, 1997, having been referred there by the Philadelphia Department of Human Services (DHS).[1] DHS reported to Devereux that all placement options within Pennsylvania had been exhausted. At the time of admission, Clinkscales had "a history of deterioration in behavior and diagnoses of post-traumatic stress disorder, polysubstance abuse, rule out major depression and rule out psychotic disorder." (Clinkscales Adjudication, Findings of Fact, No. 9.) While receiving long-term psychiatric services at Devereux's facility, Clinkscales was very aggressive and violent with his peers and with staff. Devereux discharged Clinkscales on January 3, 1998 after the Philadelphia Habitual Offenders Unit and Clinkscales' probation officer placed Clinkscales in another facility. (Clinkscales Adjudication, Findings of Fact, Nos. 1–3, 9–11, 13.)

Timbers was admitted to Devereux's facility on March 26, 1997 pursuant to a court order dated March 11, 1997.[2] Tim-

1. The record indicates that Clinkscales was adjudicated delinquent and committed to Devereux's facility by the Court of Common Pleas of Philadelphia County. (R.R. (Vol.V) at 2599a.) The record also indicates that Clinkscales' date of birth is December 12, 1978; thus, he was eighteen years old at the time of commitment. *Id.*

2. The record indicates that Timbers' date of birth is August 3, 1977; thus, Timbers was

bers had been incarcerated at a youth detention center in Philadelphia for six months prior to his admission. The reason for Timbers' admission to the facility was his polysubstance dependence and a psychotic disorder. As of August 27, 1997, Timbers' condition changed to the point where he became an appropriate patient for an alternate level of care. Devereux discharged Timbers from the facility on October 20, 1997. (Timbers Adjudication, Findings of Fact, Nos. 1–3, 8–10.)

Brinkley was admitted to Devereux's long-term treatment unit on January 1, 1998, having been referred there by DHS.[3] DHS reported to Devereux that all alternative placement options had been exhausted. Prior to admission, Brinkley had been in the custody of the Juvenile Justice Division and needed a forensic-type psychiatric facility to control his behavior. Upon his admission for long-term treatment at Devereux's facility, Brinkley's major problems were aggressive behaviors, legal involvements, depressive symptomatology, auditory hallucination, non-compliance with medication and multiple psychiatric hospitalizations. Once admitted, Brinkley demonstrated serious outbursts of aggressive behavior towards other residents. (Brinkley Adjudication, Findings of Fact, Nos. 1, 4, 7–12.)

DHS encouraged Devereux to apply for a provider agreement with DPW. Thus, in August 1997, Devereux sent DPW an application, describing the long-term inpatient psychiatric services available at the facility for older adolescents. By letter dated August 27, 1997, DPW approved the application and designated Devereux's facility as a Type 13 Medical Assistance (MA) Provider, which is an acute, private, psychiatric hospital or unit. (Clinkscales Adjudication, Findings of Fact, Nos. 6–8, 12; Timbers Adjudication, Findings of Fact, Nos. 4–6, 11; Brinkley Adjudication, Findings of Fact, Nos. 13–14, 17, 19.)

Subsequently, Devereux sought compensation from DPW for the services rendered to Clinkscales, Timbers and Brinkley. However, in a letter dated January 5, 1999, DPW denied Devereux compensation for services rendered to Clinkscales from August 27, 1997 to January 3, 1998. (Clinkscales Adjudication, Findings of Fact, No. 16.) In a letter dated December 1, 1998, DPW denied Devereux compensation for services rendered to Timbers from August 27, 1997 through October 20, 1997. (Timbers Adjudication, Findings of Fact, No. 12.) In a letter dated December 8, 1998, DPW denied Devereux compensation for services rendered to Brinkley from January 28, 1998 through the time of his discharge. (Brinkley Adjudication, Findings of Fact, No. 22.) Devereux filed timely appeals, and hearings were held before a Hearing Official for the Bureau.

After considering the evidence presented, the Hearing Official recommended that DPW deny the appeals. In the Clinkscales adjudication, the Hearing Official explained that Devereux is an inpatient psychiatric facility, and such institutions are precluded from billing for long-term care.[4]

---

nineteen years of age at the time of commitment. (R.R. (Vol.V) at 2598a.)

3. The record indicates that the Court of Common Pleas of Philadelphia County committed Brinkley to Devereux's facility. (R.R. (Vol.V) at 2600a.) The record also indicates that Brinkley's date of birth is November 5, 1979; thus, he was eighteen years of age at the time of commitment. *Id.*

4. The Hearing Official stated that, pursuant to 42 CFR § 456.651, long stay services are those provided after a total of sixty days of inpatient stay, or ninety days in the case of mental health services, during a twelve-month period beginning on July 1, not counting the days of stay paid for wholly or in part by Medicare. (Brinkley Adjudication at 6.)

The Hearing Official also stated that it was impossible to conclude from the record that Clinkscales had better access to the care he needed at Devereux's facility or that Devereux's facility was the only private psychiatric hospital facility equipped to provide the type of care that Clinkscales required. (Clinkscales Adjudication at 6–7.) With respect to Timbers, the Hearing Official explained that, once it was determined on August 27, 1997 that Timbers was appropriate for an alternate level of care, DPW had no obligation to pay for services rendered during the delay in discharge. (Timbers Adjudication at 5–6.) As for Brinkley, the Hearing Official based his recommendation, in part, on the same grounds as in the Clinkscales case. In addition, the Hearing Official concluded that DPW had no obligation to pay for Brinkley's treatment because Brinkley's admission to Devereux was unnecessary. (Brinkley Adjudication at 8–9.)

By orders dated May 19, 2000, the Bureau adopted the Hearing Official's recommendations. Devereux filed an application for reconsideration, which DPW granted. However, by orders dated April 6, 2001 and April 9, 2001, DPW upheld the Bureau's May 19, 2000 orders. Devereux now petitions this court for review.[5] DHS has filed an *amicus curiae* brief in support of Devereux.

## I. Long–Term Treatment

■ Devereux first argues that DPW erred in concluding that, as a private inpatient psychiatric facility, Devereux is precluded from billing for long-term inpatient psychiatric treatment. We agree.

Devereux applied for enrollment as a provider of psychiatric services to adolescents. (R.R. (Vol.V) at 2526a.) With its application, Devereux provided a description of its *"Long–Term* Adolescent/Young Adult Program."* (R.R. (Vol.V) at 2528a) (emphasis added). Devereux also provided a copy of its *"Long–Term* Hospital Criteria"* for admission into the program. (R.R. (Vol.V) at 2546a) (emphasis added). Thus, the application made clear that Devereux was requesting approval for *long-term* treatment. By letter dated August 27, 1997, DPW accepted Devereux's application to participate in Pennsylvania's MA program as a "private psychiatric hospital." (R.R. (Vol.V) at 2547–48a.)

DPW's regulation at 55 Pa.Code § 1151.43(a) governs payment for inpatient psychiatric hospital services in a "private psychiatric hospital." The regulation states, "For recipients age 21 and over and under age 65, payment for inpatient psychiatric hospital services in a private psychiatric hospital is limited to 60 days per benefit period." 55 Pa.Code § 1151.43(a). In other words, the regulation *only* restricts payment for inpatient psychiatric services in a private psychiatric hospital where the recipient is twenty-one years of age, or older, and under sixty-five. The payment regulation places absolutely *no limitation* on payments for inpatient psychiatric hospital services in a private psychiatric hospital where, as here, the recipient of the services is *under the age of twenty-one.*[6]

---

**5.** Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

**6.** DPW relies on the definition of a "private psychiatric hospital" in the general provisions of the MA regulations to conclude that Devereux may not bill for long-term psychiatric services. The regulations define a "private psychiatric hospital" as "[a]n institution, other than a general hospital, not directly operated or controlled by the Department that is

Because DPW erred in concluding that Devereux was precluded from billing for long-term inpatient psychiatric hospital services, DPW erred in denying payment for services rendered to Clinkscales and Brinkley on that basis.

## II. Justification for Out-of-State Placement

■ Devereux next argues that DPW erred in concluding that it was impossible to determine from the record that Devereux provided better access to the care that Clinkscales and Brinkley needed than an in-state facility or that Devereux's facility was the only facility equipped to provide the type of care they required.[7] Devereux maintains that such issues are encompassed in the court orders committing these individuals to Devereux's facility. We agree.

Under section 6352(a)(3) of the Juvenile Act, if a child is found to be delinquent, the court may commit the child to a facility for delinquent children operated under the supervision or direction of the court or other public authority and approved by DPW. 42 Pa.C.S. § 6352(a)(3). Such commitment shall be *"best suited* to the child's *treatment,* supervision, rehabilitation and welfare. ...."[8] 42 Pa.C.S. § 6352(a) (emphasis added). In this case, the Court of Common Pleas of Philadelphia County found Clinkscales and Brinkley to be delinquent children and committed them to Devereux's facility, a facility supervised by a public authority and approved by DPW. Thus, the court determined that Devereux's facility was "best suited" to treat Clinkscales and Brinkley. If commitment to Devereux's facility was "best suited" to the treatment needs of Clinkscales and Brinkley, then, certainly, Devereux's facility provided better access to the care they needed and was the only facility equipped to provide the type of care they needed.[9]

engaged in providing acute *short-term* psychiatric services on an inpatient basis." 55 Pa. Code § 1151.2 (emphasis added). However, this definition does not prohibit a "private psychiatric hospital" from providing long-term inpatient psychiatric services. It merely indicates that an institution must provide *at least* short-term inpatient psychiatric services to qualify as a "private psychiatric hospital."

Moreover, unlike the regulation at 55 Pa. Code § 1151.43(a), the definition does *not* specifically govern payment for inpatient psychiatric hospital services in a "private psychiatric hospital." It is well established that we must construe regulations so that particular provisions control the general. *See* Section 1933 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1933; *Highway News, Inc. v. Department of Transportation,* 789 A.2d 802 (Pa.Cmwlth.2002) (stating that the rules of statutory construction apply to regulations). Therefore, the definition of a "private psychiatric hospital" in the general provisions of the MA regulations does not control the disposition of the payment issue here.

7. Under DPW's regulations, out-of-state services are *not* compensable unless (1) the attending practitioner advises that there is bet-

ter access to the needed care in another state and (2) there is documentation to verify that the out-of-state facility is the only one equipped to provide the needed care. *See* 55 Pa.Code § 1101.32(b)(5); 55 Pa.Code § 1151.50(a)(2)(ii).

8. Our supreme court has stated that the juvenile courts "are particularly well suited to order relief that is treatment oriented" and, moreover, that "[t]reatment is the entire premise underlying the juvenile court system." *In re Tameka M.,* 525 Pa. 348, 358, 580 A.2d 750, 755 (1990).

9. DPW argues that there might have been an appropriate in-state facility for Clinkscales and Brinkley. However, we point out that DPW has a statutory duty to notify the courts of available secure beds for serious juvenile offenders and available general residential beds for children adjudicated delinquent. Section 6353(c) of the Juvenile Act, 42 Pa.C.S. § 6353(c). There is no finding here that DPW failed to notify the Court of Common Pleas of Philadelphia County of available beds for delinquent children, and there is no finding that the court failed to consider DPW's notice of

Because DPW erred in concluding that it was impossible to determine from the record that Devereux provided better access to the care that Clinkscales and Brinkley needed or that Devereux's facility was the only facility equipped to provide the type of care Clinkscales and Brinkley required, DPW erred in denying payment for services rendered to Clinkscales and Brinkley on that basis.

### III. Alternate Type or Level of Care

■ Devereux argues that DPW erred in denying payment for services rendered to Timbers from August 27, 1997 through October 20, 1997 after it was determined that Timbers was suitable for an alternate type or level of care. We agree.

The commitment order of the Court of Common Pleas of Philadelphia County constituted a legal determination that Timbers was suitable for placement in Devereux's facility. Notwithstanding a finding to the contrary, until the court issued a subsequent order declaring that Timbers was suitable for an alternate type or level of care, Timbers was *not* suitable for a different placement *as a matter of law.*

Because there was an unmodified legal determination that Timbers was suitable for placement in Devereux's facility, DPW erred in denying payment for services rendered to Timbers based on the contrary view that Timbers was suitable for an alternate type or level of care.

### IV. Unnecessary Admission

■ Finally, Devereux argues that DPW erred in denying payment for services rendered to Brinkley based on its finding that Brinkley's admission to Dever-

---

available beds before committing Clinkscales and Brinkley to an out-of-state facility. Therefore, we are not persuaded by DPW's argument.

eux's facility was unnecessary.[10] We agree.

As we have indicated above, Brinkley was admitted to Devereux's facility pursuant to a commitment order issued by the Court of Common Pleas of Philadelphia County. (R.R. (Vol.V) at 2600a.) The order constitutes a legal determination that commitment in Devereux's facility is "best suited" to meet Brinkley's treatment needs. Statutory law *required* such a commitment. *See* 42 Pa.C.S. § 6352(a). Therefore, Brinkley's admission to Devereux's facility was necessary, and DPW erred in determining otherwise.

Accordingly, we reverse.

### ORDER

AND NOW, this 15th day of April, 2002, the orders of the Secretary of the Department of Public Welfare, dated April 6, 2001 and April 9, 2001, are hereby reversed.

---

**10.** DPW's regulations state that DPW will not pay an inpatient psychiatric facility for unnecessary admissions. 55 Pa.Code § 1151.48(a)(9).