661 A.2d 9

DUQUESNE LITHO, INC., Appellee,

v.

ROBERTS & JAWORSKI, INC., George
L. Ball and Public Strategies, Inc.

Appeal of PUBLIC STRATEGIES, INC.

Superior Court of Pennsylvania.

Argued May 16, 1995.

Filed June 22, 1995.

Arnold H. Caplan, Pittsburgh, for Ball, appellee.

Ann Bailey, Pittsburgh, for appellant.

Before POPOVICH, HUDOCK and OLSZEWSKI, JJ.

OLSZEWSKI, Judge.

In late 1989 or early 1990, George Ball decided to run for the office of controller of the City of Pittsburgh. Pursuant to 25 Pa.S.A. § 3242, Ball organized an unincorporated political association called Citizens for George Ball (the Committee) to handle campaign matters. On August 3, 1990, the Committee contracted with Public Strategies, Inc. (Public), a political consulting organization, to assist with the campaign. Public and the Committee signed two consulting agreements (Agreements) spelling out the rights and duties of the respective parties.

In the spring of 1991, Public contracted with Roberts & Jaworski, Inc. (R & J) for the design of certain campaign flyers. R & J subsequently hired Duquesne Litho, Inc. (Duquesne) to do the printing work on the flyers. After Public received drafts of the flyers, and obtained the approval of both Ball and the Committee, the flyers were produced and distributed. Notwithstanding these and other campaign efforts, Ball was defeated in the election for controller.

After the election, Duquesne sought payment for its work in printing the flyers. Unable to collect, Duquesne filed a civil action in arbitration against R & J, seeking money damages for the costs of printing, plus interest. R & J joined Public and Ball as additional defendants. Following a 1992 hearing, the arbitration board awarded Duquesne $16,554 against R & J, and also awarded R & J $16,554 against Public. The arbitrators found that Ball was not liable to either R & J or Public.

Both R & J and Public appealed the arbitration award. The Honorable Livingstone M. Johnson convened a *de novo* hearing on July 9, 1993. During the course of the hearing, Judge Johnson directed a verdict against R & J in favor of Duquesne for $18,693, plus interest and costs. Judge Johnson also directed a verdict against Public in favor of R & J in the amount of $20,847.27, plus interest and costs. At the conclusion of the hearing, Judge Johnson entered a verdict in favor of Ball against Public. Public now appeals the trial court's order in favor of Ball.

Public seeks to hold Ball personally liable for the printing expenses it paid to R & J. After careful review of the parties' relationships, we agree with the trial court that Public has failed to establish Ball's personal liability.

Public first argues that Ball is personally liable for the Committee's debts pursuant to the common-law liability rules of unincorporated associations. Before we can address Ball's potential liability for the Committee's debts, we must first determine whether the Committee actually owed a debt to Public. In the Agreements between Public and the Committee, there is no mention of reimbursement or payment of business expenses such as these printing costs. The Agreements specifically state that Public is an independent contractor who will receive a consulting fee in return for performing certain services. Presumably, Public did not intend to subsidize the cost of printing items such as flyers, yet no provision was made for these costs in the contract. Despite this poor drafting, the Committee's treasurer did acknowledge that the Committee owed certain reimbursement money to Public. Therefore, we will assume, *arguendo*, that Public has established the existence of a debt.

Turning to Ball's personal liability for this Committee debt, our Supreme Court has held that a candidate or other member of an unincorporated political association or committee is not personally liable simply by virtue of his member-

ship. *Bloom v. Vauclain,* 329 Pa. 460, 462–64, 198 A. 78, 79 (1938). It was held that:

> Voluntary associations, for ... political ... purposes, ... are not partnerships, nor have their members the powers and responsibilities of partners. The officers, or a committee, or any number of members of such a party have no right to contract debts which will be valid against every member of the party, or of the committee, from the mere fact that he is a member of the party, or of the committee. But those who make a contract, not forbidden by law, are personally liable, and all are included in such liability who assented to the undertaking.

*Id.* (quoting *Franklin Paper Co. v. Gorman,* 76 Pa.Super. 276, 280 (1921)). Thus, a candidate or other member will only be personally liable for a political committee's debts if he actually authorized, assented to, or ratified the obligation. *Id.; see also Rove & Co. v. Thornburgh,* 824 F.Supp. 662 (W.D.Texas 1993), *aff'd,* 39 F.3d 1273 (6th Cir.1994) (discussing Texas and Pennsylvania law).

■ While the results of this rule may seem harsh at times, courts have not hesitated to enforce it because candidates and other members do have certain safeguards available to them. A candidate could easily incorporate his campaign committee and thus shield himself from personal liability. *See Rove,* 39 F.3d at 1299. A candidate could also include contractual provisions in all committee agreements with third parties that exclude the candidate from personal liability. *Id.* Thus, a candidate is not without protections under the law.

In the instant case, we agree with the trial court that candidate Ball did take the appropriate steps to protect himself. While the Agreements between Public and the Committee do not contain an express provision limiting the personal liability of Ball, they do demonstrate a clear understanding between the parties that Ball would not be held personally liable. In the first Agreement dated August 3, 1990, Ball's name was initially typed under the signature line along with the name of the Committee. R.R. 371a. Ball's name was crossed out and replaced with "Gail Ball, Chairperson for." *Id.* Thus, the parties here evidenced an understanding that

Ball would not be personally responsible for the Committee's debts.

■ Public's president, Mr. Zabierek, conceded that he understood that Ball was not to be personally liable. Counsel asked Zabierek, "when you entered the two contracts with the committee, you neither expected nor intended George Ball the individual to be liable on the committee's contracts; is that correct? At that time." R.R. 57a. Zabierek answered, "At that time, no." *Id.* Furthermore, some time after the signing of the Agreements, Ball refused to sign a promissory note assuming personal liability. All of this evidence points to a clear understanding between the parties that Ball would not be personally liable for the Committee's debts. We find, therefore, that the parties' specific agreement that Ball would not be liable controls and takes precedence over the general common law rule that candidates may be liable for their committee's debts.

■ Public also asserts that the Committee was Ball's general agent, with the authority to bind Ball personally. Public relies on a 1942 Common Pleas Court case, which held that a filing with the Secretary of State naming a political committee and authorizing it to perform certain acts created an agency relationship. *Bell Telephone Co. v. Pinchot,* 4 Monroe L.R. 75 (Pa.Com.Pl.1942). Even if we accepted this as persuasive authority, the decision in *Bell* would not control the disposition of this case. While the filing in *Bell* authorized the committee to collect and disburse funds and to incur liabilities in the interest of the campaign, the filing in this case only stated that the Committee could receive or disburse funds on behalf of Ball's campaign. Unlike in *Bell,* this is a limited, rather than a general, grant of agency authority. Moreover, Public was aware of the limited nature of this agency. As discussed above, Ball made it clear that the Committee did not have the authority to bind him personally, and Public conceded that it knew of that limitation. We find therefore that this limited grant of authority does not serve to

make Ball personally responsible for all of the liabilities incurred by the Committee.

Public also argues that it should be allowed to recover against Ball on a theory of unjust enrichment. A recovery for unjust enrichment is proper if one party is enriched by another, and an injustice would result if recovery for the enrichment is denied. *Chesney v. Stevens*, 435 Pa.Super. 71, 77, 644 A.2d 1240, 1243 n. 4 (1994). This Court has noted that the most significant question in this analysis is "whether the enrichment of the defendant is unjust. The doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff." *Styer v. Hugo*, 422 Pa.Super. 262, 268, 619 A.2d 347, 350 (1993) (emphasis in original), *aff'd per curiam*, 535 Pa. 610, 637 A.2d 276 (1994).

In this case, we find that while Ball was enriched by Public's efforts in securing the flyers, there will be no injustice in denying recovery. Public was an experienced consulting firm that knew the risks associated with campaign financing. Despite these risks and despite knowing that Ball had not assumed personal liability, Public contracted with R & J to print a large quantity of flyers. Meanwhile, Public kept assuring Ball that its fundraising efforts would probably bring in between $80,000 and $100,000. Instead, Public's fundraising efforts only garnered about $5,000. Since Ball relied on Public's assurances that fundraising money would cover expenses such as these flyers, and since Ball has already paid in excess of $40,000 to cover other expenses left after Public's fundraising efforts failed, we agree with the trial court that a denial of recovery will not confer an unjust benefit upon Ball.

Lastly, Public points to a number of comments by the trial court and alleges that the comments indicate that the court relied on irrelevant matters. We have examined the statements that Public highlights, and find nothing improper in them. The trial court spent a great deal of time on the record explaining its reasoning in this case. The court discussed credibility and factual findings, and commented on a great

deal of the evidence. While it is true that some of the evidence commented on was not necessary or even relevant to the legal determination of Ball's personal liability, there was nothing improper about the statements. The trial court simply provided a thorough discussion of all of its factual findings, and ultimately relied on the relevant evidence to come to a proper legal conclusion. Since we find no error in this discussion, or in the court's application of the law, we affirm the order below.

Affirmed.

POPOVICH, J., concurs in the result.