**Lavelle Murray v. Haggerty**

*Christopher P. Cullen,* for plaintif.
*Harry P. Mattern,* for defendant.

NEALON, *J.,* October 19, 2006—An unsuccessful candidate for the Pennsylvania State Senate, who has been sued by his former media consultant for invoices allegedly due, has filed preliminary objections demurring to his personal liability for campaign debts, challenging the sufficiency of the breach of contract averments in the complaint, and objecting to the failure to join his cam-

paign committee as a necessary party. Since the complaint and the attached exhibits indicate that the candidate actually authorized and tacitly approved the media contract in dispute, the demurrer to the candidate's personal liability will be overruled. Similarly, inasmuch as the complaint adequately avers a cause of action for breach of an oral contract, the objections to the contract claim will likewise be overruled. However, since the inclusion of the candidate's campaign committee is necessary to resolve this controversy definitively and to avoid piecemeal litigation, the plaintiff will be ordered to join "Haggerty for Senate" as a necessary party in this action.

## I. FACTUAL BACKGROUND

According to the well-pleaded allegations of the complaint and the exhibits attached thereto, see *Glassmere Fuel Services Inc. v. Clear,* 900 A.2d 398, 402 (Pa. Super. 2006) (when considering preliminary objections, trial courts must accept as true all well-pleaded material facts set forth in the complaint and all reasonable inferences that may be drawn from those facts), the Scranton-based advertising and public relations firm, Lavelle Murray, was retained in 2005 by defendant James J. Haggerty Jr., Esquire to "provide professional consulting and media plan services to Haggerty's campaign for re-election as Mayor of Kingston." (Docket entry no. 1, ¶4.) At the time that Lavelle Murray was hired for Haggerty's mayoral re-election campaign, "Haggerty informed Lavelle Murray that he wanted to use his general election mayoral effort as a springboard for a 2006 primary election campaign for the Republication nomination for the Penn-

sylvania State Senate from the 20th District, and that he wanted Lavelle Murray to creatively design its services to promote Haggerty's anticipated 2006 primary election campaign for the Republication nomination for the Pennsylvania State Senate from the 20th District." (*Id.,* ¶6.) Lavelle Murray reportedly accepted "Haggerty's offer" to provide professional services for both campaigns and did, in fact, furnish such services in late 2005 and early 2006. (*Id.,* ¶¶7-8.)

Attached to Lavelle Murray's complaint in this case are a series of e-mail communications from Lavelle Murray to Haggerty via his law office e-mail address, jjhpc@ epix.net. Most of those e-mails were forwarded to or authored by an administrative assistant in Haggerty's law firm, although several of those communications were addressed directly to Haggerty himself. Beginning in early November 2005, the substance of those e-mails concerned Haggerty's State Senate campaign and addressed such matters as his senate campaign logo, stationery, signage and official announcement. (*Id.,* attachment no. 1.)

On February 16, 2006, Lavelle Murray forwarded a letter directly to Haggerty regarding an unpaid bill for "outdoor (billboard) contracts." Lavelle Murray's correspondence referenced a meeting that was conducted with Haggerty and his campaign committee representatives on December 29, 2005, at which time Lavelle Murray "reviewed the outdoor plan in detail . . . ." (*Id.,* attachment no. 3.) In this same letter, Lavelle Murray reminded Haggerty that "[w]hen you left the meeting, you stated whatever the committee decides to do is OK with you." *(Id.)*

Approximately six weeks later, Lavelle Murray forwarded an e-mail directly to Haggerty on March 29, 2006 stating:

"Jim . . . I am continually being approached by the media (newspapers and electronic media) on the status of your campaign. I would appreciate prompt payment from you for all of our hard work so that each of our teams can move forward on a positive note." (*Id.,* attachment no. 1, p. 19.)

Additionally, on April 13, 2006, Lavelle Murray's counsel mailed a letter directly to Haggerty demanding payment of Lavelle Murray's unpaid invoice. Lavelle Murray's counsel advised Haggerty that litigation would be commenced against him on May 8, 2006, if Lavelle Murray's outstanding bill was not paid by that date. (*Id.,* attachment no. 4.)

On May 8, 2006, Lavelle Murray instituted this suit by the filing of a complaint alleging causes of action for breach of contract (Count I) and unjust enrichment (Count II) and seeking to recover $17,893.88 for unpaid services provided. On June 7, 2006, Haggerty filed preliminary objections seeking to dismiss this action on the grounds that: (1) a cognizable claim has not been stated against Haggerty individually for debts incurred by his campaign committee, "Haggerty for Senate"; (2) Lavelle Murray has not pled a claim for breach of contract with sufficient specificity; and (3) the complaint has not joined a necessary party, Haggerty for Senate, as a named defendant in this action. Following the completion of oral argument on October 11, 2006, Haggerty's preliminary objections were submitted for a decision.

## II. DISCUSSION

### (A) *Standard of Review*

"Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint." *Pennsy Supply Inc. v. American Ash Recycling Corp.,* 895 A.2d 595, 599 (Pa. Super. 2006). Preliminary objections which result in the dismissal of an action may be sustained only in those cases which are clear and free from doubt, and "[t]o be clear and free from doubt that dismissal is appropriate, it must appear with certainty that the law would not permit recovery by the plaintiff upon the facts averred." *Styers v. Bedford Grange Mutual Insurance Co.,* 900 A.2d 895, 898 (Pa. Super. 2006); *Pennsy Supply Inc., supra.* In making that determination, the court may consider only the factual allegations of the complaint and any exhibits attached thereto, *Limbach Company LLC v. City of Philadelphia,* 905 A.2d 567, 572 (Pa. Commw. 2006), and the material facts set forth in the complaint and all inferences fairly deducible from those facts are deemed admitted and accepted as true. *Insurance Adjustment Bureau Inc. v. Allstate Insurance Company,* 588 Pa. 470, 480, 905 A.2d 462, 468 (2006). If any doubt exists as to whether recovery is possible based upon the facts alleged, that doubt should be resolved in favor of overruling the preliminary objections. *Philadelphia Construction Services LLC v. Domb,* 903 A.2d 1262, 1266 (Pa. Super. 2006).

### (B) *Personal Liability of Candidates*

Haggerty contends that since several of the invoices attached to Lavelle Murray's complaint are addressed to

"Haggerty for Senate" via Haggerty's law office address at 840 Market Street, Kingston, the complaint should be dismissed in its entirety for failure to allege a claim against Haggerty personally. Pennsylvania law governing the personal liability of candidates for their campaign committees' debts evolved from earlier precedent relating to voluntary or unincorporated associations. See *Karl Rove & Co. v. Thornburgh,* 39 F.3d 1273, 1284 n.34 (5th Cir. 1994) (applying Pennsylvania law). It is well established that "[t]he mere fact that one is a candidate, an officer, or a member of a political organization does not, of itself, establish his liability, personally or otherwise, for debts incurred by that organization." *Bloom v. Vauclain,* 329 Pa. 460, 462-63, 198 A.78, 79 (1938); *Karl Rove & Co.,* 39 F.3d at 1288. Rather, a candidate may be found personally liable for a political committee's debts only if [s]he actually authorized, assented to, or ratified the obligation. *Bloom, supra; Duquesne Litho Inc. v. Roberts & Jaworski Inc.,* 443 Pa. Super. 170, 174, 661 A.2d 9, 11 (1995); *Karl Rove & Co.,* 39 F.3d at 1291. In this context, assent connotes approval and may be either express or tacit. *Karl Rove & Co.,* 39 F.3d at 1291-92 (since unsuccessful senatorial candidate knew that his committee had hired some entity to provide direct mail services, and candidate had reviewed and approved drafts of fundraising letters to be mailed, evidence sustained finding that candidate had implicitly assented to contract for direct mail fundraising services so as to be personally liable for payment of those services).

Lavelle Murray's complaint is replete with averments that Haggerty personally asked Lavelle Murray to perform professional consulting and media plan services for his senatorial campaign, that "Lavelle Murray agreed to

accept Haggerty's offer to provide its services . . . to Haggerty's projected 2006 primary election campaign" for the state senate, and that "Lavelle Murray provided its services to Haggerty for . . . his projected 2006 primary election campaign for the republican nomination" for the state senate. (Docket entry no. 1, ¶¶6-8.) The complaint also references "the oral agreement and understandings between Lavelle Murray and Haggerty" regarding professional services for his senatorial campaign. (*Id.,* ¶¶15-16.) Accepting those allegations as true for purposes of Haggerty's demurrer, Haggerty "actually authorized" his campaign committee's professional services agreement with Lavelle Murray and may be personally responsible for the nonpayment of that obligation under *Bloom, Duquesne Litho Inc.,* and *Karl Rove & Co.*

Furthermore, the e-mails attached to the complaint indicate that Haggerty advised Lavelle Murray that "whatever the committee decides to do is OK with [Haggerty]." (Docket entry no. 1, attachment no. 3.) As noted above, the requisite approval may be established by circumstantial evidence and a candidate's conduct may demonstrate tacit assent to an obligation incurred by a campaign committee. See *Karl Rove & Co.,* 39 F.3d at 1291-92. The e-mails submitted reflect that Haggerty was fully aware of Lavelle Murray's media plan, attended a meeting with his campaign committee representatives and Lavelle Murray to review that plan, and provided his *carte blanche* approval of his committee's decision with respect to Lavelle Murray's proffered services. Consequently, Lavelle Murray's averments and exhibits are sufficient to state a claim against Haggerty

personally based upon his actual authorization or tacit assent.

Decisional precedent addressing a candidate's personal liability for a political committee's debts cautions that wary candidates have safeguards available to them to provide protection from personal liability. For example, "[a] candidate could easily incorporate his campaign committee and thus shield himself from personal liability." *Duquesne Litho Inc.*, 443 Pa. Super. at 174, 661 A.2d at 11-12 (citing *Karl Rove & Co., supra*). In addition, candidates may specify in their campaign committee contracts with third parties that the purveyors of goods or services may only seek payment from committee assets and may not attempt to recover from candidates individually for any breach of those agreements. *Duquesne Litho Inc., supra* at 174, 661 A.2d at 12; *Karl Rove & Co.*, 39 F.3d at 1295. Since Lavelle Murray's complaint does not allege that Haggerty availed himself of those possible protections from personal liability, Haggerty's demurrer will be denied. See *Karl Rove & Co., supra* at 1294-95 n.90-102 (collecting published cases in which candidates were held liable for campaign committee debts).

### (C) *Contract Claim*

Haggerty also contends that "[b]ecause the complaint fails to plead with proper specificity the essential elements of a breach of contract claim, the complaint is fatally defective and should be dismissed and/or a more definite pleading ordered." (Docket entry no. 7, p. 7.) The purpose of pleadings is to place the defendants on notice of the claims upon which they will have to defend.

*Carlson v. Community Ambulance Services Inc.,* 824 A.2d 1228, 1232 (Pa. Super. 2003); *Yacoub v. Lehigh Valley Medical Associates,* 805 A.2d 579, 588 (Pa. Super. 2003), *appeal denied,* 573 Pa. 692, 825 A.2d 639 (2003); *Mulderig v. Allstate Insurance Co.,* 105 Lacka. Jur. 1, 8 (2003). "Under Pennsylvania's fact pleading system, the complainant need only state the material facts upon which a cause of action is based." *Grossman v. Barke,* 868 A.2d 561, 569 (Pa. Super. 2005) (citing Pa. R.C.P. 1019(a)), *appeal denied,* 585 Pa. 697, 889 A.2d 89 (2005). In determining whether the allegations of the complaint have been stated with adequate specificity, one portion of the complaint should not be examined in isolation and should instead "be read in context with all other allegations in that complaint." *Rachlin v. Edmison,* 813 A.2d 862, 870 (Pa. Super. 2002); *Yacoub,* 805 A.2d at 589; *Mulderig, supra.* "Only then can the court determine whether the defendant has been put upon adequate notice of the claim against which he must defend." *Grossman, supra,* 868 A.2d at 569 (quoting *Yacoub, supra*).

To state a cause of action for breach of contract, the complaint must allege: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) damages resulting from that breach. *Boyd v. Rockwood Area School District,* 907 A.2d 1157 (Pa. Commw. 2006); *Pennsy Supply Inc.,* 895 A.2d at 600; *Busy Bee Inc. v. Wachovia Bank N.A.,* 2006 WL 723487, *26 (Lacka. Co. 2006). Lavelle Murray's complaint expressly avers that Haggerty and Lavelle Murray entered into an oral agreement by virtue of which Lavelle Murray was to provide professional consulting and media plan services to Haggerty. The exhibits attached to the complaint identify Lavelle Murray's

charges for those services, Lavelle Murray's repeated demands for payment of its outstanding invoices in the amount of $17,893.88 for logo design, stationery production, photography, billboards and other marketing and media services, and Haggerty's failure to pay those invoices.

Examining the complaint as a whole, it sufficiently avers the essential terms of the parties' oral contract, Haggerty's breach of his duty to pay for Lavelle Murray's services pursuant to that contract, and Lavelle Murray's resultant damages. As such, Haggerty has been furnished adequate notice of the breach of contract claim against which he must defend, and his preliminary objections to Count I of the complaint will therefore be overruled.

### (D) *Joinder of "Haggerty for Senate" Committee*

Haggerty alternatively argues that "[t]he registered political committee Haggerty for Senate . . . is surely a necessary party to this action" and "should be added as a defendant or this case should be dismissed." (Docket entry no. 7, pp. 5-6.) In response, Lavelle Murray cites 25 P.S. §§3241-3242 and argues that a campaign committee such as Haggerty for Senate is only authorized "to receive contributions or make expenditures" and need not be joined as a necessary party since Haggerty himself is liable to Lavelle Murray. (Docket entry no. 8, pp. 14-15.) Lavelle Murray contends that Haggerty for Senate does not satisfy the criteria for classification as an indispensable party under Pennsylvania law. (*Id.,* pp. 11-14.)

"An indispensable party is one whose rights or interests are so pervasively connected with the claims of the liti-

gants that no relief can be granted without infringing on those rights or interests." *Hubert v. Greenwald,* 743 A.2d 977, 979-80 (Pa. Super. 1999), *appeal denied,* 563 Pa. 688, 760 A.2d 854 (2000). In determining whether a party is indispensable, the court should consider: whether absent parties have a right or interest related to the claim, and if so, what the nature of that right or interest is; whether that right or interest is essential to the merits of the issue; and whether justice can be afforded without violating the due process rights of absent parties. *Centolanza v. Lehigh Valley Dairies Inc.,* 540 Pa. 398, 403, 658 A.2d 336, 338-39 (1995); *In re Estate of Moore,* 871 A.2d 196, 204 (Pa. Super. 2005), *appeal denied,* 586 Pa. 728, 890 A.2d 1060 (2005). "The basic inquiry in determining whether a party is indispensable concerns whether justice can be done in the absence of a third party." *Hubert,* 743 A.2d at 980 (quoting *CRY Inc. v. Mill Service Inc.,* 536 Pa. 462, 469, 640 A.2d 372, 375-76 (1994)).

Haggerty does not assert in his preliminary objections that his campaign committee is an "indispensable party." Rather, Haggerty's preliminary objections are predicated upon Rule 1028(a)(5) and his contention that Haggerty for Senate is a "necessary party" in this matter. See Pa.R.C.P. 1028(a)(5) (stating that preliminary objections may be filed based upon "nonjoinder of a necessary party"). A necessary party is one "whose presence, while not indispensable, is essential if the court is to resolve completely a controversy and to render complete relief." *Pennsylvania Human Relations Commission v. School District of Philadelphia,* 167 Pa. Commw. 1, 14, 651 A.2d 177, 184 (1993); *In re Emery,* 138 Pa. Commw.

668, 673, 589 A.2d 283, 285 (1991); *York-Adams County Constables Association v. Court of Common Pleas of York County,* 81 Pa. Commw. 566, 569, 474 A.2d 79, 81 (1984); *Pennsylvania Assigned Claims Plan v. Insurance Commission of the Commonwealth,* 54 Pa. Commw. 93, 96-97, 420 A.2d 25, 27 (1980); *County of Allegheny v. Department of Public Welfare,* 31 Pa. Commw. 379, 383, 376 A.2d 290, 292 (1977), *aff'd,* 486 Pa. 144, 404 A.2d 671 (1979). Unlike the absence of an indispensable party which deprives the court of jurisdiction to issue an enforceable decree or order, see *Hubert, supra,* the failure to join a necessary party does not affect the jurisdiction of the court. *County of Allegheny, supra; Emerald Enterprises Ltd. v. Upper Mt. Bethel Township,* 39 D.&C.3d 536, 539 (Northhamp. Cty. 1985). Moreover, the conclusion that a party is not an indispensable party does not mean that joinder of that party is otherwise unnecessary. See *York-Adams County Constables Association, supra* (finding that although county commissioners were not indispensable parties, they were nevertheless required to be joined as necessary parties); *County of Allegheny, supra* at 383 ("[T]he conclusion, however, that their joinder is not required to confer jurisdiction upon the court does not mean that such joinder is not otherwise necessary."). On the contrary, joinder as a necessary party may be warranted "so as to accomplish the purposes of avoiding multiple suits and conserving judicial resources." *Emerald Enterprises Ltd., supra* at 539 (citing *Mangin v. Huntingdon Inc.,* 71 D.&C.2d 367, 370-71 (Bucks Cty. 1976)).

Lavelle Murray's complaint avers that in October 2005, "Lavelle Murray and Haggerty, by and through

either his campaign staff or himself, sent and received a series of e-mails either to or from each other regarding Haggerty's projected 2006 primary election." (Docket entry no. 1, ¶9.) As observed above, many of the e-mails attached to Lavelle Murray's complaint were authored or received by a campaign committee assistant named Shelby. (*Id.*, attachment no. 1.) Haggerty will presumably argue in this case that the Lavelle Murray services in dispute were performed at the express or implied direction of campaign committee staff rather than Haggerty. It is conceivable that the fact-finder may conclude that Haggerty is not personally liable for Lavelle Murray's unpaid invoices. See *e.g., Duquesne Litho Inc., supra* (candidate found not liable whereas political consulting organization held liable). In the event that the fact-finder reaches such a conclusion prior to the expiration of the statute of limitations applicable to Lavelle Murray's contract claim, it is possible that Lavelle Murray could then institute a second suit alleging breach of contract by Haggerty for Senate. See *Wilkes ex rel. Mason v. Phoenix Home Life Mutual Insurance Co.,* 587 Pa. 590, 611 n.9, 902 A.2d 366, 378 n.9 (2006) (res judicata or claim preclusion requires identity of persons and parties to the action); *R. W. v. Manzek,* 585 Pa. 335, 350, 888 A.2d 740, 748 (2005) (collateral estoppel or issue preclusion applies only if the party against whom it is asserted was a party or in privity with a party in the prior case).

Unless Haggerty for Senate is joined as a necessary party to this proceeding, the prospect of duplicative litigation and inefficient use of limited judicial resources will exist. The interests of the litigants and the courts

will best be served if Haggerty for Senate is joined as a party in this action so that a single, definitive adjudication can be made. Contrary to Haggerty's contention, dismissal of this action is an inappropriate remedy for failure to join a necessary party, and, for that reason, the preliminary objections will be sustained only to the extent that Lavelle Murray will be ordered to file an amended complaint naming Haggerty for Senate as a necessary party. See *York County Constables Association, supra; Lewison v. Vitti,* 20 Pa. Commw. 587, 590-91, 342 A.2d 507, 510 (1975). An appropriate order follows.

## ORDER

And now, October 19, 2006, upon consideration of "defendant's preliminary objections," the memoranda of law submitted by the parties and the oral argument of counsel on October 11, 2006, and based upon the reasoning set forth in the foregoing memorandum, it is hereby ordered and decreed that:

(1) Defendant's preliminary objections in the nature of a demurrer for failure to state a claim against the defendant individually are overruled;

(2) Defendant's preliminary objections asserting a failure to adequately allege an oral contract in conformity with Pa.R.C.P. 1028(a)(3) are overruled; and

(3) Defendant's preliminary objections pursuant to Pa.R.C.P. 1028(a)(5) alleging the nonjoinder of a necessary party are sustained to the extent that the plaintiff is directed to file an amended complaint within the next 20 days joining the defendant's campaign committee, Haggerty for Senate, as a named party in this action.